# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Consiglio v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 121142

| | |
|---|---|
| Appellate Court Caption | ANGELO CONSIGLIO, M.D., Plaintiff-Appellant, v. THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION; BRENT E. ADAMS, Secretary of the Department of Financial and Professional Regulation; and JAY STEWART, Director of the Division of Professional Regulation of the Department of Financial and Professional Regulation, Defendants-Appellees.–BRADLEY HIROSHI HAYASHI, D.C., Plaintiff-Appellant, v. THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION; BRENT E. ADAMS, Secretary of the Department of Financial and Professional Regulation; and JAY STEWART, Director of the Division of Professional Regulation of the Department of Financial and Professional Regulation, Defendants-Appellees.–MOHAMMED KALLEELUDDIN, M.D., Plaintiff-Appellant, v. THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION; and JAY STEWART, Director of the Division of Professional Regulation of the Department of Financial and Professional Regulation, Defendants-Appellees.–NERCY JAFARI, M.D., Plaintiff-Appellant, v. ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION; and JAY STEWART, Director of the Division of the Professional Regulation of the Department of Financial and Professional Regulation, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket Nos. 1-12-1142, 1-12-1143, 1-12-1197, 1-12-1242 cons. |
| Filed | April 8, 2013 |
| Rehearing denied | May 2, 2013 |
| Rehearing denied | May 3, 2013 |

| | |
|---|---|
| Held | In a consolidated appeal by health care workers whose licenses were permanently revoked without a hearing pursuant to the Health Care Worker Self-Referral Act, based on conduct including convictions or sentences requiring registration as sex offenders, the appellate court affirmed the dismissal of plaintiffs' complaints and rejected their contentions that the Act, *inter alia*, was retroactive and infringed on their right to substantive due process, violated the protection against double jeopardy and *ex post facto* laws, and offended separation of powers principles, and that prior disciplinary decisions against plaintiffs constituted a *res judicata* bar to the revocations. |
| (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 11-CH-28998, 11-CH-29295, 11-CH-29367, 11-CH-41721; the Hon. Franklin Valderrama, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Bruno & Weiner, of Chicago (Edward F. Bruno and Joseph E. Bruno, of counsel), for appellants. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Nadine J. Wichern, Assistant Attorney General, of counsel), for appellees. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion. |
| | Justices Rochford and Delort concurred in the judgment and opinion. |

## OPINION

¶ 1 At issue in these consolidated appeals is the constitutionality of section 2105-165 of the Illinois Department of Professional Regulation Law (20 ILCS 2105/2105-165 (West Supp. 2011)) (hereinafter referred to as the Act) as applied to the health-care-worker plaintiffs. Subsection (a) of the Act provides that the license of a health care worker as defined in the Health Care Worker Self-Referral Act (225 ILCS 47/1 *et seq.* (West 2010)) who: "(1) has been convicted of a criminal act that requires registration under the Sex Offender

Registration Act; (2) has been convicted of a criminal battery against any patient in the course of patient care or treatment, including any offense based on sexual conduct or sexual penetration; (3) has been convicted of a forcible felony; or (4) who is required as part of a criminal sentence to register under the Sex Offender Registration Act *** shall by operation of law be permanently revoked without hearing." 20 ILCS 2105/2105-165(a) (West Supp. 2011). The Act became effective on August 20, 2011. Thereafter, and pursuant to the Act, the licenses issued to the plaintiffs to provide health services in Illinois were permanently revoked by the Department of Financial and Professional Regulation (Department) by reason of their having been previously convicted of batteries against patients.

¶ 2 The facts giving rise to these consolidated appeals are relatively uncomplicated. Each of the plaintiffs was licensed by the Department as a health care worker. Specifically, Angelo Consiglio, M.D., Nercy Jafari, M.D., and Mohammed Kalleeluddin, M.D., were licensed under the Medical Practice Act of 1987 (Medical Practice Act) (225 ILCS 60/1 *et seq.* (West 2010)) as physicians licensed to practice medicine in all of its branches. Bradley Hiroshi Hayashi, D.C., was licensed under the Medical Practice Act as a chiropractic physician, licensed to treat human ailments without the use of drugs and without operative surgery. Subsequent to being licensed, each of the plaintiffs was convicted of battery or abuse against a patient in the course of care or treatment.

¶ 3 In 2000, Kalleeluddin was convicted of four counts of misdemeanor battery upon female patients. As a consequence of the allegations of misconduct that led to his convictions, the Department suspended Kalleeluddin's license to practice medicine on February 19, 1998. Kalleeluddin's medical license remained suspended until December 18, 2000, when the Department issued an order restoring it subject to a term of indefinite probation. On November 9, 2007, following an administrative hearing, the Department entered an order terminating Kalleeluddin's probation and restoring his medical license, unencumbered.

¶ 4 In August 2001, Jafari was convicted of misdemeanor criminal sexual abuse for misconduct involving a female patient. He was sentenced to 24 months' probation and was required to register as a sex offender for 10 years after the date of his conviction. In 2003, the Department determined that Jafari's medical license did not need to be suspended, revoked, or otherwise limited. In 2010, the Department revisited Jafari's fitness in connection with the operation of his surgical center, and it determined that no action was required. Jafari's duty to register as a sex offender expired four days after the Act took effect.

¶ 5 On January 26, 2005, Consiglio pled guilty to misdemeanor battery upon a female patient in his medical office on January 5, 2004. As a result of his conviction, the Department summarily suspended Consiglio's medical license on February 5, 2005. On May 24, 2005, the Department entered a consent order, under which Consiglio and the Department agreed that his medical license would remain suspended until May 31, 2005, and that thereafter, and until further order, his license would be on an indefinite probation status, subject to certain conditions set forth in the consent order. On August 10, 2006, the Department entered another consent order, finding that Consiglio had fully complied with the terms and conditions of his probation, and restoring his license to practice medicine, unencumbered.

¶ 6 On May 21, 2007, Hayashi was convicted of misdemeanor battery based upon the

testimony of a patient that he had touched her inappropriately during the course of treatment. On November 24, 2008, the Department entered a consent order, under which Hayashi and the Department agreed that his license to practice as a chiropractic physician would be suspended for a period of 30 days and thereafter reinstated on a probationary basis for a minimum of 3 years, subject to the terms and conditions set forth in the order.

¶ 7 Following the revocation of their licenses, the plaintiffs filed separate actions in the circuit court of Cook County, seeking, *inter alia*, (1) a judicial declaration that the Act can be applied only prospectively as the result of convictions that occur after its effective date; and (2) injunctive relief enjoining the Department from revoking their licenses to provide health services as a consequence of any conviction occurring prior to August 20, 2011, the Act's effective date. The Department and Jay Stewart, the Director of its Division of Professional Regulation, filed motions to dismiss the plaintiffs' actions pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)), which the circuit court granted. Thereafter, the plaintiffs each filed timely notices of appeal, and their appeals have been consolidated for purposes of judicial economy.

¶ 8 As the plaintiffs' complaints in these consolidated appeals were dismissed in response to the defendants' motions brought pursuant to section 2-615 of the Code, the only question before this court is whether the dismissed counts state causes of action upon which relief can be granted. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 147 (2002). "The legal sufficiency of a complaint alleging that a statute or ordinance is unconstitutional may be raised by way of a section 2-615 motion." *DeWoskin v. Loew's Chicago Cinema, Inc.*, 306 Ill. App. 3d 504, 513 (1999). The issues presented are of law; consequently, our review is *de novo*, independent of the reasoning of the trial court. *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1084 (1994).

¶ 9 In ruling on these appeals, we have taken as true all well-pleaded facts in the complaints as well as all reasonable inferences that may be drawn from those facts, and we have construed all the allegations in the light most favorable to the plaintiffs. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). However, conclusions of law or fact contained within the challenged complaints, unsupported by specific factual allegations, were not taken as true. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47 (1991).

¶ 10 The plaintiffs have raised a number of arguments in support of their respective appeals. Some of the arguments are common to all of their briefs, whereas some are advanced by fewer than all of the plaintiffs. We will discuss all of the arguments raised without specifying which plaintiff or plaintiffs raised them. The plaintiffs argue that, as applied to them, the Act (1) is retroactive in a manner that offends the constitutional guarantee of substantive due process; (2) infringes on their constitutional rights to procedural due process; (3) violates their constitutional protection against double jeopardy; (4) violates the constitutional prohibition against *ex post facto* laws; (5) offends separation of powers principles by abridging the Department's discretionary authority and the judiciary's power of review; (6) impairs the obligations of contracts between the Department and the plaintiffs, in violation of the contracts clause of the Illinois Constitution; (7) imposes an excessive penalty in violation of the proportionate penalties clause of the Illinois Constitution; (8) cannot be enforced, because the Department's prior disciplinary decisions create a *res judicata* bar to

new discipline; and (9) unfairly deprives them of vested limitations and repose defenses. For the reasons that follow, we reject all of these arguments.

¶ 11    The plaintiffs first argue that the plain language of the Act does not reflect an intent that it apply to health care workers convicted of a triggering event prior to its enactment. Further, even if the legislature so intended, the plaintiffs argue that the due process clauses of the federal and state constitutions bar such retroactive changes in the law. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2; *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 98 (2010). We disagree on both points.

¶ 12    Our first task is to determine whether the legislature intended that the Act apply to triggering events occurring before its effective date. In construing a statute, our goal is to ascertain and give effect to the legislature's intent. *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 15. The most reliable way to ascertain the legislative intent is to examine the language of the statute, giving its words their plain and ordinary meaning. *Id.*

¶ 13    The Act provides that, when a licensed health care worker "has been convicted" of one triggering offense, his or her license "shall by operation of law be permanently revoked without a hearing." Although the plaintiffs argue that the Act contains no express statement that it applies to individuals who have been convicted of a triggering event prior to its enactment, their argument is belied by the clear and unambiguous language of the Act. The phrase "has been" is in the present perfect tense, which is used to refer to a past event that has present consequences. See *In re Gwynne P.*, 215 Ill. 2d 340, 357-58 (2005) (the language " '[h]as prevented' is in the present perfect tense, a verb form used to denote action beginning in the past and continuing to the present"). Thus, the Act clearly applies to the plaintiffs' convictions, even though those convictions predate the Act.

¶ 14    The next question to be resolved is whether the Act operates retroactively in a way that violates their rights to substantive due process. To determine whether a statute operates retroactively for purposes of substantive due process, our supreme court has adopted the analysis set forth in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 39 (2001). Under *Landgraf*, if the legislature has clearly indicated the temporal reach of a statute, then, absent a constitutional prohibition, that expression of legislative intent must be given effect. *Id.* at 38. When the legislature has not indicated the temporal reach, then the court must determine whether applying the statute would have a retroactive impact; meaning, " 'whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.' " *Id.* (quoting *Landgraf*, 511 U.S. at 280). "If there would be no retroactive impact, as that term is defined by the court, then the amended law may be applied." *Id.* If the amendment has a retroactive impact, then the court must presume that the legislature did not intend that it be so applied. *Id.*

¶ 15    In their arguments, the plaintiffs somewhat conflate the issues of whether the Act applies to convictions that predate its enactment and whether the Act operates retroactively. The fact that application of the Act's mandatory revocation provisions may depend upon criminal acts which predate its effective date does not necessarily render it retroactive in nature. *Landgraf*,

511 U.S. at 269-70; *Cox v. Hart*, 260 U.S. 427, 435 (1922).

¶ 16    Indeed, although the Act may draw upon antecedent convictions for its operation, it does not impose new legal consequences to the plaintiffs' convictions or their right to practice medicine in the years after their convictions and prior to its effective date. "Rather, the statute looks prospectively at [their] right to continue practicing medicine in the future." *Bhalerao v. Illinois Department of Financial & Professional Regulations*, 834 F. Supp. 2d 775, 783 (N.D. Ill. 2011). As the court held in *Bhalerao*, the Act creates a present and future effect on present and future conduct, and has no effect on the plaintiffs' rights to practice medicine in the past. *Id.* at 783-84; see also *Wineblad v. Department of Registration & Education*, 161 Ill. App. 3d 827, 830 (1987) (finding the State may change the requirements for the issuance or retention of a professional license so long as the requirement bears some reasonable relationship to the legitimate interest of public health and safety); *United States v. Leach*, 639 F.3d 769, 773 (7th Cir. 2011) (finding new Sex Offender Registration and Notification Act (18 U.S.C. § 2250(a) (2006)) was not retroactive merely because it applied to convictions that predated its enactment; rather, the law created "new, prospective legal obligations based on the person's prior history"). In sum, the Act affects only the plaintiffs' rights to practice as health care workers subsequent to its enactment, and it is not retroactive in a manner that triggers the substantive due process protections described in *Landgraf*.[1]

¶ 17    Next, the plaintiffs argue that the Act may not be given effect where doing so violates their procedural due process rights. Procedural due process delineates the procedures that must be followed before depriving a person of life, liberty, or property. *Fischetti v. Village of Schaumburg*, 2012 IL App (1st) 111008, ¶ 15. The plaintiffs argue that, because the Act requires revocation of their licenses without a hearing, it denies them their rights to procedural due process. Again, we disagree.

¶ 18    Due process is a flexible concept, and the procedural safeguards it requires may not be the same in all situations. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 201 (2009). Procedural due process does not necessarily require a proceeding that is akin to a judicial proceeding; nor does it require a hearing in every instance a government action impairs a private interest. *Callahan v. Sledge*, 2012 IL App (4th) 110819, ¶ 27. Courts should consider the following factors in evaluating procedural due process challenges: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the value, if any, of any additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedural safeguards would entail. *Konetski*, 233 Ill. 2d at 201.

¶ 19    Under the first factor, a professional license constitutes a property interest. See *Smith v. Department of Registration & Education*, 412 Ill. 332, 340-41 (1952) ("It has been universally held that a license to practice medicine is a 'property right,' within the meaning

_____

[1]Because we find that the Act is not retroactive in nature, we reject the plaintiffs' arguments that the savings clauses of the Statute on Statutes (5 ILCS 70/4 (West 2010)) and the Civil Administrative Code of Illinois (20 ILCS 5/5-95 (West 2010)) bar the Act's application to them.

of the constitutional guarantees of due process of law."). Under the second factor, the risk that a license may be erroneously revoked under the Act is low, because the Act operates only upon a conviction, the existence of which is a matter of public record which can be established without a fact-finding hearing. As for the third factor, there is a strong government interest in protecting the public from health care workers with past criminal convictions. *Carter-Shields v. Alton Health Institute*, 201 Ill. 2d 441, 463 (2002); see *People ex rel. Eppinga v. Edgar*, 112 Ill. 2d 101, 108-10 (1986) (finding a hearing not required in license revocation of driver charged with drunk driving where the risk of erroneous revocation was low and the government interest in highway safety was high). Further, a hearing requirement would impose additional burdens without any corresponding benefit. Therefore, as in *Eppinga*, due process does not mandate a hearing under the circumstances present in the instant cases.

¶ 20     Furthermore, the plaintiffs acknowledge that they were provided notice that their licenses were being revoked in accordance with the Act, and that they could challenge the revocation in writing within 20 days pursuant to section 2105-165(e) (20 ILCS 2105/2105-165(e) (West Supp. 2011)), which provides that a licensee may challenge a revocation by raising a defense disputing the existence of a triggering event. The plaintiffs concede they were convicted of the offenses triggering revocation under the Act and that they do not fall within any recognized exception; thus, a hearing would not benefit them.

¶ 21     The plaintiffs, nevertheless, claim that the Act interferes with their right to a hearing under section 22 of the Medical Practice Act (225 ILCS 60/22 (West 2010)), which provides for a hearing process to determine one's fitness to practice medicine. However, the plaintiffs' licenses were not revoked pursuant to section 22 of the Medical Practice Act. Their licenses were revoked pursuant to the Act, and the Act does not adopt any provision of the Medical Practice Act. The Act explicitly provides that a license shall be revoked "notwithstanding any other provision of law to the contrary." 20 ILCS 2105/2105-165(a) (West Supp. 2011). Accordingly, we reject the plaintiffs' due process challenges to the Act, as well as their argument that they were entitled to a hearing by statute.

¶ 22     Next, the plaintiffs assert that the revocation of their licenses violates the constitutional prohibition against double jeopardy, because the Act imposes successive punishment for the same offenses. We reject the argument because we conclude that the license revocations do not constitute punishment.

¶ 23     The double jeopardy clauses in our federal and state constitutions bar multiple criminal punishments for one offense. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10; *Hudson v. United States*, 522 U.S. 93, 99 (1997); *People v. Lavariega*, 175 Ill. 2d 153, 155 (1997); see *In re P.S.*, 175 Ill. 2d 79, 91 (1997) (Illinois construes its double jeopardy clause in lockstep with that of the federal constitution). Generally, a civil penalty is not considered a punishment for the purposes of double jeopardy. *Hudson*, 522 U.S. at 99. However, if a civil penalty is so punitive in nature or effect that it is the "functional equivalent" of a criminal punishment, the penalty may violate the constitutional prohibition against double jeopardy. *Wilson v. Department of Revenue*, 169 Ill. 2d 306, 312-13 (1996). When determining whether a civil penalty is actually punitive in nature, a court must look first to the intent of the legislature. *Lavariega*, 175 Ill. 2d at 155-56. If the legislature's intent was to create a civil

penalty, but the statute's effects are clearly punitive, then the penalty constitutes a criminal punishment and can be barred by the prohibition against double jeopardy. *Id.*

¶ 24    To determine whether a civil penalty is punitive for double jeopardy purposes, we apply a seven-factor analysis that asks:

"(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment, retribution, and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned." *Bhalerao*, 834 F. Supp. 2d at 788 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)).

¶ 25    In analyzing these factors, we take guidance from *Bhalerao*, a federal district court decision that rejected several of the challenges to the Act that the plaintiffs now raise, including the argument that the Act violates the double-jeopardy clauses of the federal and Illinois constitutions. See *Bhalerao*, 834 F. Supp. 2d at 789-92. Indeed, for the most part, we follow the *Bhalerao* court's analysis.

¶ 26    Under the first factor, a statute imposes an affirmative disability or restraint when " 'the sanction in question smacks of the infamous punishment of imprisonment.' " *Bhalerao*, 834 F. Supp. 2d at 789 (quoting *Cox v. Commodity Futures Trading Comm'n*, 138 F.3d 268, 272-73 (7th Cir. 1998)). The Act's license revocation provision imposes a serious penalty on the plaintiffs, but that penalty does not amount to imprisonment. *Bhalerao*, 834 F. Supp. 2d at 789. On the second factor, "the revocation of a voluntarily granted privilege, like a license, is not something that courts have regarded as a punishment." *Bhalerao*, 834 F. Supp. 2d at 789. Thus, the first two factors indicate that the Act is not punitive. However, the third factor, which applies where the law is triggered by an event that requires *scienter*, indicates punitive effect: the convictions that trigger the Act all require proof of *scienter*. *Bhalerao*, 834 F. Supp. 2d at 789.

¶ 27    The fourth factor, like the first two, indicates that the Act does not have punitive effect. That factor asks whether the sanction promotes traditional goals of criminal punishment, such as retribution and deterrence. As the *Bhalerao* court explained, the Act accomplishes very little toward those goals, because, when the Act was enacted, professional licenses were "already subject to possible revocation for [criminal convictions], and thus the change in the law–from discretionary revocation to mandatory revocation–does not appear to have been intended as an additional deterrent or retribution." *Bhalerao*, 834 F. Supp. 2d at 790.

¶ 28    The fifth factor, on the other hand, indicates that the Act does have punitive effect, because the Act is triggered by behavior that is already criminal. *Bhalerao*, 834 F. Supp. 2d at 790. As for the sixth factor, we agree with the *Bhalerao* court's reasoning that the Act has alternative (*i.e.*, nonpunitive) purposes–namely, the protection of public health and safety and the maintenance of the integrity of the medical profession–and that those purposes are actually the primary goals of the legislation. *Bhalerao*, 834 F. Supp. 2d at 790. Thus, the sixth factor indicates nonpunitive intent.

¶ 29   On the seventh factor, which asks whether the sanction is excessive in relation to its nonpunitive purpose, we part ways with the *Bhalerao* court's analysis. In determining that the seventh factor indicated punitive intent, the *Bhalerao* court reasoned that the Act, though enacted for a nonpunitive purpose, is excessive in light of the fact that the plaintiff had practiced medicine without further reported incident during the time since the Department declined to revoke his license. *Bhalerao*, 834 F. Supp. 2d at 791. If the immediate threat to patients were the only harm the Act was designed to address, we might agree with *Bhalerao* that a professional's later good conduct could prove the Act's sanction to be excessive. The immediate threat, however, is not the only concern that animates the Act. As the *Bhalerao* court itself explained, the State has a " 'legitimate concern for maintaining high standards of professional conduct,' " because " '[t]he practice of medicine, in addition to skill and knowledge, requires honesty and integrity of the highest degree.' " *Bhalerao*, 834 F. Supp. 2d at 791 (quoting *Kaplan v. Department of Registration & Education*, 46 Ill. App. 3d 968, 975 (1977)). Further, as the *Bhalerao* court also noted, "allowing convicted healthcare professionals to continue to practice would give them access to patients and patient information, after they have already been found to have violated" "the special trust relationship between a patient and healthcare professional." *Bhalerao*, 834 F. Supp. 2d at 791. Even if the Act may have proven unnecessary to meet the immediate threat the *Bhalerao* plaintiff, or the plaintiffs here, posed to their patients, it is necessary to avoid these other harms caused by the plaintiffs' continued practice. For that reason, we conclude that the Act is not excessive in light of its nonpunitive purposes.

¶ 30   On balance, then, we conclude, as did the *Bhalerao* court, that the above factors do not indicate punitive effect. Because we conclude that the Act creates a civil penalty without punitive effect, we hold that it does not violate the constitutional protection against double jeopardy when applied to the plaintiffs.

¶ 31   The plaintiffs also maintain that the Act violates the proscriptions against *ex post facto* laws contained in article I, section 9, of the United States Constitution (U.S. Const., art. I, § 9) and article I, section 16, of the Illinois Constitution (Ill. Const. 1970, art. I, § 16) when applied to individuals, such as themselves, whose only conviction for battery against a patient in the course of patient care occurred prior to August 20, 2011, the effective date of the Act. They argue that the Act imposes an additional penalty, the revocation of their professional licenses, for a criminal act committed before its effective date. We reject this argument too.

¶ 32   Illinois construes the *ex post facto* clause in the Illinois Constitution in lockstep with the United States Supreme Court's interpretation of the *ex post facto* clause in the federal Constitution. *Konetski*, 233 Ill. 2d at 209. It has long been held that any law which changes the punishment for a crime and inflicts a greater punishment than the law annexed to the crime when committed is an unconstitutional *ex post facto* law. *Kring v. Missouri*, 107 U.S. 221, 228 (1883). The constitutional prohibition against *ex post facto* laws is aimed at legislative enactments that retroactively alter the definition of crimes or increase the punishment for criminal acts. *California Department of Corrections v. Morales*, 514 U.S. 499, 505 (1995). While the constitutional prohibition against *ex post facto* laws generally applies only to penal statutes (*Collins v. Youngblood*, 497 U.S. 37, 41 (1990)), it has been

applied to civil statutes which can fairly be characterized as punitive (*Leach*, 639 F.3d at 772).

¶ 33    The Act is undoubtedly a civil statute, as demonstrated by its placement in the Civil Administrative Code (20 ILCS 5/1-1 *et seq.* (West 2010)). Whether it may be fairly characterized as punitive is determined by the same seven factors used in double jeopardy analysis. *Smith v. Doe*, 538 U.S. 84, 97 (2003) (applying same seven *Kennedy* factors used in double jeopardy analysis to *ex post facto* analysis). We determined in our double jeopardy analysis that the Act's license revocation mandate constitutes a civil sanction, not a criminal punishment. We believe the Act is nonpunitive in nature, its clear intent being the protection of the health, safety and welfare of the public; and that it was not intended as additional punishment for the plaintiffs' past criminal acts. See *Bhalerao*, 834 F. Supp. 2d at 792-93. Accordingly, because it is not punitive, the Act does not violate the proscription against *ex post facto* laws.

¶ 34    Next, the plaintiffs argue that the Act violates the Illinois Constitution's separation of powers provision, which states that the legislative, executive, and judicial branches shall be separate and that "[n]o branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. The main objective of the separation of powers clause is to ensure that no governmental branch coerces or dominates another branch's functions. *City of Waukegan v. Pollution Control Board*, 57 Ill. 2d 170, 175 (1974). Although the three branches must maintain some separation, "[t]he Supreme Court has never considered that the powers of government are held in rigidly separated compartments." *Id.* at 175. Therefore, one branch is not completely restricted from exercising functions typically associated with the powers of another branch. *Id.* at 174-75. Here, we accept the plaintiffs' position that the Department, an administrative agency possessing both rule-making and adjudicatory functions, entered the prior orders allowing the plaintiffs to retain or reinstated their licenses by exercising its quasi-judicial functions. Based on this premise, the plaintiffs argue that the Act violates separation-of-powers principles in two ways.

¶ 35    First, some plaintiffs argue that by providing for no hearing, the Act removes the courts' ability to review the Department's decisions to revoke their licenses. However, in our discussion of due process, we concluded that a hearing is not required to settle the question of whether a health care worker has had a conviction that triggers the Act. Thus, the lack of a hearing does not interfere with judicial review.

¶ 36    Second, other plaintiffs argue that the Act violates separation-of-powers principles, because the legislature passed it in order to overturn the Department's previous decisions that allowed the plaintiffs to retain their licenses or have them reinstated. While the General Assembly may not pass a statute in an attempt to change the result of a judicial decision which has been finally decided as between the parties, the legislature "has the authority to change the law for future cases arising from facts existing prior to the effective date of the legislation which made the change." *Sanelli v. Glenview State Bank*, 108 Ill. 2d 1, 10 (1985). That is exactly the situation in this case. As we stated earlier, although the Act may draw upon antecedent convictions for its operation, it does not operate retroactively and does not retroactively affect the Department's previous decisions. By the same token, in passing the Act, the legislature did not overturn the Department's prior decisions; rather, it prospectively

revoked licenses as of the Act's effective date. We, therefore, reject the plaintiffs' argument that the legislature improperly exercised the Department's quasi-judicial powers by passing the Act in order to overturn previous decisions that reinstated or allowed the plaintiffs to retain their licenses.

¶ 37    Next, some plaintiffs argue that application of the Act to them violates the contracts clause contained in article I, section 16, of the Illinois Constitution, because it impairs the consent orders that they entered into with the Department. The contracts clause provides that "[n]o *** law impairing the obligation of contracts *** shall be passed." Ill. Const. 1970, art. I, § 16. In order to determine whether a law violates the contracts clause, a court will consider whether (1) a contractual obligation existed; (2) the law impaired that obligation; (3) the impairment was substantial; and (4) the impairment was reasonable and necessary to serve an important public purpose. *In re Marriage of Rosenbaum-Golden*, 381 Ill. App. 3d 65, 75-76 (2008). In this case, the parties do not dispute that the plaintiffs' consent orders constitute contracts. See *In re M.M.D.*, 213 Ill. 2d 105, 114 (2004). The parties also agree that the Act substantially impaired the plaintiffs' contractual rights, because it resulted in the permanent revocation of their licenses, a result not contemplated by the terms of their consent orders with the Department. The parties disagree, however, as to whether the substantial impairment was reasonable and necessary to serve an important public purpose.

¶ 38    Courts generally defer to legislative judgment as to the necessity and reasonableness of legislation (*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 412-13 (1983)), but, as the plaintiffs point out, courts limit that deference where the State is a party to a contract and there is a possibility that the State impaired a contract out of self-interest (*Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 505 (1987)). Even under the less deferential standard, however, we conclude that the impairment caused by the Act is reasonable and necessary to serve an important public purpose.

¶ 39    The plaintiffs argue that the revocation of their licenses is not reasonable and necessary because their behavior following their convictions demonstrates that they now pose no danger to their patients. In fact, the plaintiffs argue that their conduct demonstrates that their consent orders actually served the public interest better than the Act's mandatory license revocation provision. The reasonableness of the consent orders, however, is not our concern: our inquiry focuses on whether the Act is reasonable and necessary to serve an important public purpose. We conclude that it is.

¶ 40    All contracts are subject to the police power of the State. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 398 Ill. App. 3d 510, 529 (2009); *Lincoln Towers Insurance Agency, Inc. v. Boozell*, 291 Ill. App. 3d 965, 969 (1997). As a result, the State may infringe on a person's contractual rights in order to safeguard the interests of its people. *Sanelli*, 108 Ill. 2d at 23. The legislature promulgated the Act to protect the public from health care workers who have been convicted of certain crimes, as a response to what the legislature deemed to be inadequate oversight provided by the Department. Just as we stated that the Act is not excessive to meet its nonpunitive goals for purposes of double-jeopardy analysis, we conclude that the Act is not excessive for purposes of the contract-clause analysis. Even if the plaintiffs' continued practice without further complaint has proven the Act to be unnecessary to meet any immediate threat to their patients, it is nonetheless necessary to stop

other harm to public safety. The plaintiffs' continued licensure interferes with the State's high standards for licensure of health care workers, and it degrades public trust in a profession that depends on a "special trust relationship between a patient and healthcare professional." *Bhalerao*, 834 F. Supp. 2d at 791. Accordingly, we reject the plaintiffs' argument that the Act's application to them violates the contract clause of the Illinois Constitution.

¶ 41    The plaintiffs also argue that the Act violates the proportionate penalties clause of article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), because the permanent nature of the punishment does not correspond to the seriousness of their respective offenses and does not aid in their rehabilitation. Article I, section 11, provides, in pertinent part, that: "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The proportionate penalties clause in the Illinois Constitution is interpreted in lockstep with the federal constitution's prohibition against cruel and unusual punishment. *Konetski*, 233 Ill. 2d at 206-07. Both provisions apply only where the government has inflicted a penalty upon a criminal defendant. *People v. Boeckmann*, 238 Ill. 2d 1, 17 (2010).

¶ 42    For the reasons set forth in our double jeopardy and *ex post facto* analyses, we find that the Act is nonpunitive in nature, because its purpose is to protect the health, safety and welfare of the public, and not to punish health care providers, such as the plaintiffs, for past criminal convictions. See *Rios v. James*, 63 Ill. 2d 488, 497 (1976); *Bhalerao*, 834 F. Supp. 2d at 791-93. Because the Act is not punitive, it cannot constitute a disproportionate penalty.

¶ 43    Next, some plaintiffs argue that the revocation of their licenses is barred by the doctrine of *res judicata*. "The doctrine of *res judicata* provides that a final judgment on the merits by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies, and as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action." *Dowrick v. Village of Downers Grove*, 362 Ill. App. 3d 512, 515-16 (2005). The doctrine applies to "administrative decisions that are adjudicatory, judicial, or quasi-judicial." *Dowrick*, 362 Ill. App. 3d at 516. In the plaintiffs' view, the Department's previous orders punishing them for their misconduct constitute judgments that bar any further punishment against them for the same conduct.

¶ 44    Even if we were to assume that the Department orders or agreements here could have preclusive effect, we would find no *res judicata* bar under the current facts. Normally, *res judicata* works to prevent repetitious lawsuits over decided matters. *Statler v. Catalano*, 293 Ill. App. 3d 483, 486-87 (1997) (quoting *City of Des Plaines v. Metropolitan Sanitary District of Greater Chicago*, 16 Ill. App. 3d 23, 24-25 (1973)). Thus, the doctrine extends only to the facts and conditions that existed at the time the original judgment was entered. A change in circumstances can create a new basis for a claim and thus obviate the danger of repetitive litigation. See *Statler*, 293 Ill. App. 3d at 487 (quoting *City of Des Plaines*, 16 Ill. App. 3d at 24-25). For those reasons, "[a] change in law occurring between two successive causes of action on the same subject matter renders *res judicata* inapplicable." *Bernstein v. Department of Human Services*, 392 Ill. App. 3d 875, 895 (2009).

¶ 45    In this case, we have just such a change in law. At the time the Department entered its

original orders punishing the plaintiffs, Illinois law did not require that their licenses be revoked under the circumstances presented here. Now, license revocation is mandated by the Act. Accordingly, the Department's original orders reflected the Department's determination as to whether license revocation was warranted, while the Department's current orders reflect its administration of a law requiring revocation. The two orders respond to different issues, and they were issued pursuant to different statutes. For these reasons, *res judicata* does not apply.

¶ 46    To urge the opposite conclusion, the plaintiffs direct us to *City of Des Plaines v. Metropolitan Sanitary District of Greater Chicago*, 59 Ill. 2d 29 (1974), a decision they argue stands for the proposition that "a change in circumstances in law cannot affect the *res judicata* effect of a judgment." We disagree with the plaintiffs' reading of *City of Des Plaines*. In that case, the City of Des Plaines sought a declaration that its zoning ordinance barred the district from constructing a water reclamation plant on land it had purchased in the city. *City of Des Plaines*, 59 Ill. 2d at 29-30. The zoning issue had been adjudicated in the district's favor, but the City of Des Plaines argued that the intervening adoption of a new state constitution altered the parties' relationship, so that the old judgment should not have *res judicata* effect. *City of Des Plaines*, 59 Ill. 2d at 30-31. The supreme court responded that "the cause of action, the issues, the parties and the relief sought in this action [were] identical to those in the earlier case" and that the constitutional change was "irrelevant." *City of Des Plaines*, 59 Ill. 2d at 31. In our reading, this language does nothing to upset the principle that a change in law nullifies the doctrine of *res judicata*; the language explains instead that there was no relevant change in law in *City of Des Plaines*. Here, by contrast, after the issuance of the Department's first orders, the law fundamentally changed to foreclose the once-available option to allow professionals to keep their licenses under the circumstances presented in this case. After this change in the law, the Department's prior orders lost their *res judicata* effect.

¶ 47    Finally, the plaintiffs argue that the statute of limitations and repose defenses under the Medical Practice Act (225 ILCS 60/22(A) (West 2010)) and the Code (735 ILCS 5/13-205 (West 2010)) would preclude the Department's revocation of their licenses if the Act did not bar them from raising those defenses. They argue, therefore, that the Act violates their right to substantive due process by depriving them of vested time-bar defenses. We disagree, because the time-bar defenses on which the plaintiffs rely have no applicability to revocation proceedings under the Act.

¶ 48    It is true that section 2105-150 of the Act provides that, for violations of the Medical Practice Act, the Department must follow the provisions of that act, including its limitations provision, prior to taking disciplinary action. 20 ILCS 2105/2105-150 (West 2010). However, section 2105-150 applies to violations of the Medical Practice Act, not the mandatory revocation provision of section 2105-165 (the Act).

¶ 49    The plaintiffs also contend that, because the Act contains neither its own limitations provision nor an explicit provision adopting or barring another statutory limitations period, we should infer that the limitation in section 13-205 of the Code applies. We disagree.

¶ 50    In interpreting a statute, we seek to ascertain and give effect to the intent of the

-13-

legislature. *People ex rel. Department of Labor v. K. Reinke, Jr., & Co./Reinke Insulation*, 319 Ill. App. 3d 721, 726 (2001). In *Reinke*, the court considered whether the omission of a limitations provision in section 12(b) of the Minimum Wage Law (820 ILCS 105/12(b) (West 1998)) meant that the legislature intended that no limitation apply to actions brought by the Department of Labor, or whether the legislature intended to adopt the limitation provision contained in section 13-205 of the Code. *Reinke*, 319 Ill. App. 3d at 726. The *Reinke* court reasoned that while there is no rule that the State can never be bound by a statute of limitations, the determination of whether a government action is immune from a statute of limitations depends upon "whether the right sought to be asserted is a right belonging to the 'general public' rather than to the government or to 'some small and distinct subsection of the public at large.' " *Id.* at 726 (quoting *City of Shelbyville v. Shelbyville Restorium, Inc.*, 96 Ill. 2d 457, 462 (1983)). The *Reinke* court determined that actions brought by the Department of Labor involved a right belonging to the general public, despite the fact that the actions involved individual employees, because the public at large had an interest in enforcing minimum wage laws. *Id.* at 726-27. It concluded that the "legislature likely believed that an action by a State agency to enforce compliance with a wage law involved a public right and was immune from statutes of limitation." *Id.* at 727. In this case, given that the stated legislative policy behind the Act focuses on the right of the general public to be protected from unauthorized or unqualified health care professionals (20 ILCS 2105/2105-10 (West 2010)), we conclude that legislature believed the Act involved a public right and that an action brought by the Department to enforce it should carry no limitations provision. For that reason, even assuming that the Act creates a cause of action to which a statute of limitations can apply, we interpret the legislature's omission of a limitations period in the Act as an indication that no limitations period should apply, not as an incorporation of the general limitations period contained in section 13-205 of the Code.

¶ 51    Having found that the limitations defenses in the Medical Practice Act and the Code do not apply to the Act and that the legislature intended that no limitation apply to license revocations pursuant to the Act, we reject the plaintiffs' contention that they were deprived of their due process rights.

¶ 52    Because none of the counts in the plaintiffs' complaints in issue state claims upon which relief may be granted, the complaints were properly dismissed pursuant to section 2-615 of the Code. We, therefore, affirm the judgments of the circuit court of Cook County.

¶ 53    Affirmed.