**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 230061-U

Order filed November 20, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| MICHAEL BRENCZEWSKI, JR, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-23-0061 |
| | ) | Circuit No. 21-L-336 |
| FOREST PRESERVE DISTRICT OF WILL COUNTY, | ) | |
| | ) | |
| | ) | The Honorable |
| Defendant-Appellee. | ) | John C. Anderson |
| | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice Holdridge and Justice Hettel concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*: (1) The trial court erred by granting the Forest Preserve immunity against the claim of interference with business expectancy in count II of the plaintiff's complaint because the District did not meet its evidentiary burden of showing that its decision to purchase a parcel of land was based on an application of discretion and policy; (2) count II, alleging interference with business expectancy, was properly dismissed based on the plaintiff's failure to allege the existence of a valid, preexisting, business relationship; and (3) the constitutional challenges in count I of the complaint were properly dismissed because the plaintiff failed to establish an interest in property that was protectible by the due process and takings clauses.

¶ 2    The plaintiff filed a two-count complaint alleging a violation of his constitutional rights under the Illinois due process and taking clauses, as well as tortious interference with his business expectancy, when his private license to hunt was revoked by the property owners due to their sale of a small parcel of that land to the Forest Preserve District. The District filed a successful motion to dismiss both counts with prejudice, asserting that his interest in the license was not constitutionally protectible and that the District had immunity under section 2-619.1 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2020)). The plaintiff appealed after denial of his motion to reconsider the dismissal of count II of his complaint. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In May 2021, the plaintiff, Michael Brenczewski, Jr., filed a two-count complaint against the Forest Preserve District of Will County (District) in the Will County circuit court. Count I alleged violations of article 2, section 2, of the Illinois constitution, barring the deprivation of property without due process, and article 2, section 15, of the constitution, precluding uncompensated governmental takings; count II alleged the District's tortious interference with his business expectancy. Both counts were premised on allegations that the District had improperly deprived him of the ability to hunt on private property owned by Allyn & June Bronk (the Bronks). The complaint alleged that, between 1996 and 1998, the Bronks gave permission to the plaintiff and his now-deceased father to hunt on over 150 acres of land that they owned, thereby granting them a private "license." That license was memorialized in writing on October 17, 2003; it permitted the plaintiff to hunt on properties that included a 70-acre mining parcel located at 119th Street west of Weber Road, an 80-acre farm on Van Dyke Road in Plainfield, Illinois, and the river portion of a mining parcel located east of Book Road off 119th Street (collectively, the "property"). Brenczewski's complaint alleged that, since the grant of the

2

license, the District engaged in harassment designed to preclude him from exercising his right to use the property for hunting.

¶ 5    The complaint included examples of the alleged harassment by law enforcement officers from the District, the Will County Sheriff's Office, and the Illinois Department of Natural Resources (DNR) and asserted that those repeated challenges to his hunting rights were prompted by complaints from residents of Naperville's High Meadow Subdivision. Examples cited in the complaint were: (1) the burning of a duck-hunting blind in November 2002; (2) the subsequent burning of the blind two more times between Spring 2005 and December 2005; (3) the District's attempt to limit the plaintiff's access to the property in the Fall 2007 by building a new gate on Book Road, although he was eventually provided with a gate key; (4) the removal of the plaintiff's signs from the property in Summer 2008; and (5) blocking his access to the Book Road gate in Fall 2008, Fall 2009, and Fall 2010. Brenczewski alleges that the harassment increased after other people, who were not connected with him, trespassed on nearby property and engaged in dangerous hunting practices in 2016.

¶ 6    The complaint also alleged that, in February 2017, three District commissioners falsely accused the plaintiff of littering and trespassing in an attempt to thwart his use of the property. In addition, the District falsely claimed that it had acquired Book Road and again threatened to block the plaintiff's access to it, forcing him to hire an engineer to disprove the claim. In addition, District employees harassed Brenczewski as he was hunting on the property in December 2019 by demanding that he obtain a special use permit and inquiring about why his vehicle was parked on District land. After a meeting in February 2020, several District commissioners agreed to end the harassment if Brenczewski entered into a lease for the property. Shortly after that, the plaintiff found out that the District had unsuccessfully offered to give the

3

Naperville Polo Farm Development a sewer and water easement that it needed for annexation to Naperville if it purchased a .38-acre parcel of land (parcel) and gave it to the District. The complaint claimed that the offer was an attempt to prevent Brenczewski from accessing the property through that parcel.

¶ 7    The next month, the plaintiff and the Bronks discussed the possibility that he would purchase that .38-acre parcel for $50,000, but the transaction was not completed because Brenczewski did not believe it would be sufficient to ensure his access to the property free of District harassment. In April 2020, the District made an offer to the Bronks to buy the parcel prior to receiving an appraisal, allegedly in violation of its own Land Acquisition Policy. Despite a subsequent appraisal valuing the parcel at only $4,000, the District bought it for $55,000 in June 2020. Prior to the sale, the Bronks sent the plaintiff a written revocation of their earlier permission to hunt on the property, as required in a Rider to the real estate contract they later signed with the District.

¶ 8    In response to the complaint, the District filed a motion to dismiss pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2020)) that asserted three arguments: (1) the plaintiff had no protectible property interest in the private hunting license for purposes of due process; (2) its purchase of the property had a legitimate purpose and the complaint did not allege any improper motive; and (3) it was immune from liability under sections 2-109 and 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/2-109, 2-201 (West 2020)).

¶ 9    The trial court dismissed count I of the complaint, finding that the plaintiff's hunting license did not constitute a property interest protected by the Illinois constitution because it was privately granted and revocable at will. Therefore, the Bronks' revocation of the license did not

4

implicate Brenczewski's constitutional rights. The trial court also concluded that the District "could justifiably interfere with Brenczewski's permissive right to hunt on the property," explaining that the District "could justifiably and understandably decide that it does not want anyone hunting on property it owns. Likewise, it could justifiably and understandably decide that it does not want to acquire property that is encumbered by private licenses to hunt." Finally, the court found that, although the District was not immune from liability under the constitutional claims in count I of the complaint, it was immune from the business interference claim in count II. In addition, the court dismissed count II because Brenczewski failed to claim that his permissive use of the property constituted a valid business purpose. For those reasons, the trial court granted the District's section 2-619.1 motion to dismiss with prejudice. Brenczewski then filed a motion to reconsider, which the trial court denied, before filing a timely notice of appeal.

¶ 10                                    II. ANALYSIS

¶ 11        On appeal, Brenczewski argues that the trial court committed reversible error by finding that: (1) the District had immunity under sections 2-109 and 2-201 of the Act (745 ILCS 10/2-109, 2-201 (West 2020)) that precluded liability under the claim of tortious interference with a business expectancy in count II of the complaint; (2) count II failed to state a claim for interference with business expectancy; and (3) count I failed to state a claim for an unconstitutional taking of Brenczewski's property. Because these issues present questions of law, we will review them *de novo*. *Cwilka v. Sheir*, 345 Ill. App. 3d 23, 29 (2003). When reviewing dismissals under sections 2-615 and 2-619, we must accept as true all well-pleaded facts and draw all reasonable inferences in favor of the plaintiff. *Id*.

¶ 12                              A. Governmental Immunity

5

¶ 13    Turning first to the issue of whether the District was properly immunized under sections 2-109 and 2-201 of the Act (745 ILCS 10/2-109, 2-201 (West 2020)), Brenczewski contends that it did not offer sufficient evidence to establish immunity. Section 2-109 and 2-201 of the Act state: "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable" (745 ILCS 10/2-109 (West 2022)), and "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused" (745 ILCS 10/2-201 (West 2022)).

¶ 14    "Whether an act or omission is classified as discretionary within the meaning of section 2-201 escapes precise formulation and should be made on a case-by-case basis in light of the particular facts and circumstances." *Snyder v. Curran Township*, 167 Ill. 2d 466, 474 (1995) (citing *Johnston v. City of Chicago*, 258 Ill. 494, 497 (1913), and *Johnston v. City of East Moline*, 405 Ill. 460, 466 (1950)). Once established, the immunity provided by Section 2-201 is absolute, covering both negligent and willful and wanton acts. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 195-96 (1997). To obtain that broad immunity, a defendant "must prove its employee held either a position involving the determination of policy or a position involving the exercise of discretion. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341 (1998). In addition, the defendant must establish that the act or omission giving rise to the injuries was both a determination of policy and an exercise of discretion. *Id.*" *Monson v. City of Danville*, 2018 IL 122486, ¶ 29.

¶ 15    In *Monson*, policy decisions were defined as those that involved a balancing of disparate interests and the application of judgment to arrive at the best solution. *Id.* ¶ 30. Discretion exists

6

when a decision is " 'unique to a particular public office' [Citation.] and 'involve[s] the exercise of personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed' [Citation.]." *Id.* (quoting *Snyder*, 167 Ill. 2d at 474, and *Wrobel v. City of Chicago*, 318 Ill. App. 3d 390, 394-95 (2000)).

¶ 16 Brenczewski argues that the District failed to make an adequate showing because it failed to offer any affidavit or facts establishing the use of discretion, such as by identifying the decisionmaker, the "particular public office" that made the decision, or even how the decision was made. Due to this lack of evidence, the District did not satisfy its burden under section 2-619(a)(9) to obtain immunity from the claim in count II of the complaint, alleging interference with business expectancy. We agree.

¶ 17 In *Monson*, the plaintiff alleged that the City's negligent and willful and wanton conduct breached its duty to maintain public property in a reasonably safe condition and that the breach resulted in her being injured when she fell on uneven pavement. *Monson*, 2018 IL 122486, ¶ 7. In relevant part, the focus of the parties' arguments was on whether the City's decision about repairing that portion of the pavement was a ministerial or discretionary act. Only if the decision was discretionary could the City assert immunity. If the decision was ministerial, immunity was unavailable. *Id.* ¶ 30.

¶ 18 After reviewing the City's evidence, the supreme court rejected its bare assertion that the acts or omissions alleged in the plaintiff's complaint were discretionary. *Id.* ¶ 33. Because the City failed to offer any evidence that its decision not to repair that particular stretch of pavement was discretionary, the court reversed the award of summary judgment for the City and remanded the cause for additional proceedings. *Id.* ¶ 39.

7

¶ 19        Here, as in *Monson*, the District provided no evidence to show how the decision to purchase the property was made. It did not identify the decision-making employee or even attempt to establish that the unidentified employee "held either a position involving the determination of policy or a position involving the exercise of discretion," as required in that case. *Id.* ¶ 29. Moreover, the District did not offer any evidence to support the requisite finding that its decision involved the use of discretion because it was " 'unique to a particular public office' [Citation.] and 'involve[s] the exercise of personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed' [Citation.]." *Id.* ¶ 30 (quoting *Snyder*, 167 Ill. 2d at 474, and *Wrobel*, 318 Ill. App. 3d at 394-95). Without any evidence in the trial record to satisfy the District's burden of proving that it qualified for absolute tort immunity, the trial court erred in finding that the District was immunized under section 2-201. Accordingly, the court erroneously dismissed with prejudice Brenczewski's claim of interference with reasonable business expectancy alleged in count II of his complaint based on the District's tort immunity.

¶ 20                B. Failure to State a Claim for Interference with Business Expectancy

¶ 21        Brenczewski also maintains that the trial court erred in dismissing count II of his complaint because it did not assert that his personal use of the Bronks' land as a hunting ground constituted a legitimate business purpose. He argues that, to survive dismissal, his claim for intentional interference with business expectancy had to allege: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) the defendant's intentional and unjustified interference that prevents the realization of the business expectancy, and (4) damages resulting from the interference. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA,* 384 Ill. App. 3d 849, 862 (2008)." He also recognizes that

8

he must establish that the District's acts were "a purposeful or intentional interference demonstrating impropriety," again citing *Chicago's Pizza*, 384 Ill. App. 3d at 863. Indeed, the primary focus of his argument is that "the District acted with malice," which he alleges was demonstrated by decades of threats and harassment by the District in an effort to preclude the exercise of his hunting privileges.

¶ 22    Brenczewski's argument, however, ignores a fundamental problem with his business expectancy claim: he offers no support to satisfy the requirement that he had "a reasonable expectancy of entering into a valid business relationship" to hunt on the Bronks' land. See *id.*, 384 Ill. App. 3d at 862 (listing the elements of the cause of action). In each of the cases cited by Brenczewski, the business expectancy claim at issue alleged interference with a legitimate commercial/business relationship or transaction. For example, the transaction at issue in *Miller v. Lockport Realty Group, Inc.*, 377 Ill. App. 3d 369 (2007), involved a home sale. In *Chicago's Pizza*, 384 Ill. App. 3d 963, the dispute was over the alleged misuse of a competing restaurant's name. The business transaction at the heart of *Belden Corp. v. InterNorth, Inc.*, 90 Ill. App. 3d 547 (1980), implicated a business merger and acquisition attempt. Finally, the issue in *Candalaus Chicago, Inc. v. Evans Mill Supply Co.*, 51 Ill. App. 3d 38 (1977), involved allegations that a manufacturer of paper products was unfairly selling the same goods directly to customers of one of its broker-distributors. In each of those cases, the presence of a legitimate business relationship was indisputable.

¶ 23    In sharp contrast, Brenczewski's complaint simply alleges that the District's purchase of the parcel interfered with his hunting privileges under the gratuitous agreement he had with the Bronks. The record includes a copy of a brief document entitled "Hunting Permission Letter." That letter was directed to "To whom it may concern" and advised that Brenczewski and his

father "are hereby authorized and permitted to hunt on all real estate owned by [the Bronks]. This authorization letter shall continue to be in full force and effect until such time as the undersigned have revoked this letter in writing." Thus, by its very terms, the agreement was gratuitous, not supported by consideration, and could be terminated at will by the Bronks with only a written notice. The character of that informal permissive arrangement is simply not the kind of "business" relationship or transaction exemplified in the cases cited by Brenczewski.

¶ 24     Although the loss of Brenczewski's permission to hunt may have meant that he would have to pay to hunt on other land in the future, that does not make it a valid business enterprise or transaction; he does not even suggest that he was in the business of hunting or that any of his hunting excursions were part of a business-related endeavor. If we adopted his implicit and strained view of "a valid business relationship," our interpretation would unduly expand the term "business relationship" well beyond the plain and ordinary meaning of those words, as well as their usage in the cited case law. Reading the term so broadly would be a violation of one of our most basic rules of construction. See *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007) (explaining that "[a] court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent"). Accordingly, we agree with the trial court that Brenczewski failed to establish that his permissive use of the parcel of land under the agreement with the Bronks constituted a valid business purpose, which constitutes a critical element of his business expectancy claim. In the absence of a valid business purpose, the trial court properly dismissed the claim in count II of Brenczewski's complaint for tortious interference with business expectancy.

¶ 25                    C. Failure to State A Claim for an Unconstitutional Taking

10

¶ 26     Finally, Brenczewski asserts that the trial court erred in finding that count I of his complaint failed to state a claim for the unconstitutional taking of property, namely his private license to hunt on the Bronks' land pursuant to his longstanding agreement with the couple. Brenczewski claims that he had a protectible property interest in the license to hunt on the property and that its termination was a "taking" for purposes of the Illinois due process (Ill. Const. 1970, art. I, § 2) and takings clauses (Ill. Const. 1970, art. I, § 15) because it was mandated in the sale contract. We note that the Bronks terminated the license agreement prior to the execution of their land contract with the District, although it was anticipated by a rider in that contract. The Bronks were free to reject the rider, to limit their withdrawal of the hunting privilege to the .38 acres purchased by the District, or to refuse to sell at all. There simply was no governmental taking.

¶ 27     After examining the reasoning in the cases cited by the plaintiff, we conclude that they are inapt because they involve licenses issued by governmental authorities, not by private parties. In *Sonsiglio v. Department of Financial and Professional Regulation,* 2013 IL App (1st) 121142, ¶ 2, the plaintiff physicians raised due process claims after their medical licenses were revoked due to their convictions for battery or criminal sexual abuse of patients during the course of their treatment. The court agreed with the plaintiffs that their licenses constituted property interests for purposes of the due process clause, citing *Smith v. Department of Registration and Education*, 412 Ill. 332, 341 (1952), although it ultimately rejected the merits of their constitutional claims. *Sonsiglio*, 2013 IL App (1st) 121142, ¶ 19. In *Smith*, the court considered another physician's due process challenge to the revocation of his medical license. Concluding that the right to practice law or medicine invoked the fundamental right to work, the court held that a medical license was business "property" for purposes of due process. *Smith*, 412 Ill. at 340–41. Here,

11

however, Brenczewski does not contend that his livelihood or any other constitutionally protected interest was contingent on the continuation of the hunting license. Thus, we find that both *Sonsiglio* and *Smith* are distinguishable. The right to hunt on another's land is not the functional equivalent of being deprived of one's livelihood due to the revocation of a professional license.

¶ 28 Brenczewski also attempts to analogize to the reasoning in *People ex rel. Eppings v. Edgar*, 112 Ill. 2d 101, 103 (1986), in which the plaintiff sought to restore a driver's license on constitutional grounds after it was revoked due to his drunk driving arrest. Relying on the reasoning in *Bell v. Burson*, 402 U.S. 535, 539 (1971), the court agreed that the plaintiff's driver's license constituted a protectible property interest under the due process clause. *Edgar*, 112 Ill. 2d at 107. As the United States Supreme Court explained in *Bell*, "[o]nce licenses are issued, ***, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Bell*, 402 U.S. at 539. That rationale "is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' " *Id.*

¶ 29 The same "general proposition" is not at work in the instant case, however, because here the Bronks did not terminate a governmental "entitlement" when they revoked their permission for Brenczewski to hunt on their land. The parties' longstanding private agreement expressly stated that the hunting authorization "shall continue to be in full force and effect until such time as the undersigned have revoked this letter in writing." In other words, the license expressly reserved the Bronks' right to terminate the agreement at will, and they chose to exercise that

12

right prior to selling the property to the District. The termination of license to hunt on the property failed to invoke any "state power to terminate an entitlement," distinguishing it from the licenses at issue in *Bell*. *Id*.

¶ 30        Our own case law also supports the conclusion that a license to use land does not create a constitutional interest in the property. In *Millennium Park Joint Venture, LLC v. Houlihan*, the court relied on Illinois precedent stating that " 'a license is a limited right to use the licensor's premises for a specific purpose, subject to the management and control retained by the licensor. [Citation.] A license conveys no right to the land and is revocable at the licensor's will.' [Citation.] A license is not assignable." *Millennium Park*, 393 Ill. App. 3d 13, 25 (2009) (quoting *Metropolitan Airport Authority v. Property Tax Appeal Board*, 307 Ill. App. 3d 52, 56 (1999) (quoting *Stevens v. Rosewell*, 170 Ill. App. 3d 58, 62 (1988))). Similarly, the court in *JCRE Holdings, LLC v. GLK Land Trust*, recognized that the limitations inherent in a license to use another's land, stating

> "[a] license, ***, is permission to do an act or a series of acts upon the land of another without possessing any interest in the land. [*Mueller v. Keller*, 118 Ill. 2d 334, 340 (1960).] A license is merely permission to do things on the land of another and is not an estate in itself. *Id*. A license cannot ripen into an easement regardless of the amount of time the license is enjoyed. *Id*. A license terminates upon the transfer of title. *Maton Brothers, Inc. v. Central Illinois Public Service Co.,* 356 Ill. 584, 591 (1934). ***
> *Kamphouse v. Gaffner*, 73 Ill. 453, 460 (1874); see *Maton Brothers*, 356 Ill. at 591."
> *JCRE Holdings*, 2019 IL App (3d) 180677, ¶¶ 14-15.

Although the plaintiff correctly notes that the cited cases do not address constitutional challenges, they nonetheless explain that the right to exercise a private license is necessarily

limited by its nature. Nothing in those explanations suggests that the fundamental nature of a license changes if it becomes the subject of a constitutional challenge. The same principles apply here as in those cases.

¶ 31        Weighing in on the question, the federal court in *Kapadia v. Chicago Transit Authority*, No. 87 C 1919, 1987 WL 11383, at \*2 (N.D. Ill. May 15, 1987), explained the persistent confusion between public licenses issued by the government and licenses issued simply to grant access to property, stating

"the law of public licenses and permits issued pursuant to legislation has virtually no relevance to this case [involving licenses to operate popcorn stands near CTA stations]. The CTA is not a body which grants licenses to persons to allow them to carry on certain municipally-regulated activities, and it did not issue plaintiffs a license under any statute controlling popcorn stands. Rather, the license plaintiffs acquired was a license with respect to real property. [Citation.] The CTA granted plaintiffs permission to come onto and use CTA property for a particular purpose, just as any landholder might. Thus the Illinois law to which we must look is not the law of public licenses and permits, but rather the law of licenses with respect to real property.

Under that law, plaintiffs do not have an interest which the due process clause protects. A license by definition is not a permanent entitlement and does not operate to create an estate in land in the licensee. It merely constitutes permission to do certain things on the licensor's land. The licensor ordinarily can revoke it at any time, with or without a reason. *Mueller v. Keller*, 18 Ill. 2d 334, 340 (1960). Thus the CTA infringed no property interest which Illinois law would recognize when it terminated plaintiffs' licenses to operate the popcorn stands. *Cf. Stone Mountain Game Ranch, Inc. v. Hunt*,

14

746 F.2d 761, 764–765 (11th Cir.1984) (due process clause not implicated when state park refused to renew lease to operate tourist attraction on park grounds when lease expired)." *Kapadia*, 87 C 1919, 1987 WL 11383, at \*2.

¶ 32 After reviewing the relevant case law, we hold that Brenczewski failed to establish a constitutionally protectible interest in the hunting license issued to him by the Bronks. Thus, the trial court properly dismissed both constitutional claims in count I of his complaint.

¶ 33                                   III. CONCLUSION

¶ 34 For the reasons stated, we affirm the trial court's grant of the District's motion to dismiss Brenczewski's complaint with prejudice pursuant to section 2-619.1, as well as the denial of his motion to reconsider the dismissal of Count II, alleging interference with business expectancy.

¶ 35 Circuit court judgment affirmed.

¶ 36 Affirmed.