# Illinois Official Reports

## Supreme Court

---

*Hayashi v. Illinois Department of Financial & Professional Regulation*,
2014 IL 116023

---

| | |
|---|---|
| Caption in Supreme Court: | BRADLEY HIROSHI HAYASHI, D.C., *et al.*, Appellants, v. THE ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION *et al.*, Appellees. |
| Docket Nos. | 116023, 116163, 116190 cons. |
| Filed | October 17, 2014 |
| Rehearing denied | January 26, 2015 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Because medical licenses are subject to ongoing State regulation to protect the public, the 2011 statute mandating permanent revocation of the licenses of health care workers convicted of certain criminal offenses established new eligibility requirements as of its effective date and is neither retroactive nor subject to constitutional challenge as such; and prior discipline is not a *res judicata* bar to such license revocation, while prior reinstatement does not create any vested right to practice. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Franklin U. Valderrama, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Dennis Doherty, of Chicago, for appellant Hayashi.

Charles P. Sheets, Kathryn M. Stalmack and Paula S. Kim, of Polsinelli PC, of Chicago, for appellant Jafari.

William C. Coughlin, of Worth, for appellant Khaleeluddin.

Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Nadine J. Wichern, Assistant Attorney General, of Chicago, of counsel), for appellees.

Claudia E. Castro, of Springfield, and Marc E. Rosenthal, Michael F. Derksen and Jacki L. Anderson, of Proskauer Rose LLP, of Chicago, for *amicus curiae* Illinois Coalition Against Sexual Assault.

Justices

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    Pursuant to section 2105-165 of the Department of Professional Regulation Law (20 ILCS 2105/2105-165 (West 2012)) (the Act), the Illinois Department of Financial and Professional Regulation (Department) permanently revoked plaintiffs' health care licenses as a result of plaintiffs' prior misdemeanor convictions for battery and criminal sexual abuse of their patients. Plaintiffs filed complaints for declaratory and injunctive relief, which the circuit court of Cook County dismissed. The appellate court affirmed. 2013 IL App (1st) 121142.

¶ 2    In this court, plaintiffs challenge the revocation of their licenses on a number of grounds. They contend that the Act: (1) does not apply to individuals who were convicted of a triggering offense prior to the Act's effective date; (2) is impermissibly retroactive and impairs certain fundamental rights, in violation of substantive due process (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2); (3) violates procedural due process; (4) is unenforceable based on the *res judicata* effect of the previous discipline imposed by the Department; (5) violates the federal and state constitutional protections against double jeopardy (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10); (6) violates the prohibition against bills of attainder in the United States Constitution (U.S. Const., art. I, §§ 9, 10); (7) violates the takings clause in the United States Constitution (U.S. Const., amend. V); and (8) violates the federal and state constitutional prohibitions against *ex post facto* laws (U.S. Const., art. I, §§ 9, 10; Ill. Const. 1970, art. I, § 16).

¶ 3     We find no merit in any of plaintiffs' claims, and, consequently, affirm the appellate court's judgment affirming the circuit court's dismissal of plaintiffs' complaints.

¶ 4                                    BACKGROUND

¶ 5     Bradley Hiroshi Hayashi, D.C., was licensed as a chiropractic physician in 2000. On May 21, 2007, Hayashi was convicted of misdemeanor battery for touching a patient inappropriately during treatment. On November 24, 2008, the Department entered an order memorializing a consent agreement between Hayashi and the Department, pursuant to its authority to discipline health care professionals under the Medical Practice Act of 1987. 225 ILCS 60/22 (West 2008). The order stated that Hayashi's license to practice as a chiropractic physician would be suspended for 30 days and, thereafter, would be reinstated on a probationary basis for a minimum of three years, subject to the terms and conditions in the order. That order was in effect at the time of the revocation of Hayashi's license.

¶ 6     Nercy Jafari, M.D., a licensed physician, was convicted in August 2001 of misdemeanor criminal sexual abuse for inappropriately touching a female patient. He was sentenced to 24 months' probation and was required to register as a sex offender for 10 years, pursuant to the Sex Offender Registration Act (730 ILCS 150/1 et seq. (West 2000)). In 2003, the Department determined after an investigation that Jafari's medical license need not be suspended, revoked, or otherwise limited. Jafari's duty to register as a sex offender expired on August 24, 2011.

¶ 7     Mohammed Khaleeluddin, M.D., a licensed physician, had his license to practice medicine suspended by the Department in 1998, based on allegations of inappropriate or sexual misconduct with his female patients. (Spelling of Khaleeluddin's surname reflects that found on his initial complaint and his professional license.) Khaleeluddin was convicted in 2000 of four counts of misdemeanor battery in connection with the allegations. Khaleeluddin's medical license remained suspended until December 18, 2000, when the Department issued an order restoring it subject to a term of indefinite probation. On November 9, 2007, after an evidentiary hearing, the Department entered an order terminating Khaleeluddin's probationary status and restoring his medical license to unencumbered status.

¶ 8     On July 21, 2011, the Illinois General Assembly enacted Public Act 97-156, which amended the Department of Professional Regulation Law of the Civil Administrative Code of Illinois by adding section 2105-165 (20 ILCS 2105/2105-165 (West 2012)). Effective August 20, 2011, the Act mandates the permanent revocation, without a hearing, of the license of a health care worker who has been convicted of certain criminal offenses, including criminal battery against any patient in the course of patient care or treatment and any criminal offense which requires registration under the Sex Offender Registration Act. The purpose of the Act was to protect the health, safety, and welfare of the public by ensuring that individuals convicted of certain sex offenses would no longer be eligible to practice medicine in Illinois. 20 ILCS 2105/2105-10 (West 2012); 97th Ill. Gen. Assem., Senate Proceedings, May 18, 2011, at 27 (statements of Senator Dillard).

¶ 9     Shortly after the Act went into effect, the Department issued notices to plaintiffs indicating its intent to revoke their licenses pursuant to the Act because each of the plaintiffs had been convicted of a crime listed in the Act. Plaintiffs filed separate actions in the circuit court of Cook County against the Department and individual Department officials seeking injunctive relief and a judicial declaration that the Act may be applied only to convictions imposed after

its effective date. The Department subsequently entered administrative orders permanently revoking plaintiffs' health care licenses.

¶ 10 The circuit court denied plaintiffs' motions for preliminary injunctions on the basis that they showed no likelihood of success on the merits of their claims. The court also granted defendants' motions to dismiss plaintiffs' complaints pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)), finding that plaintiffs failed to state claims upon which relief could be granted. Plaintiffs appealed. The appellate court consolidated the appeals and affirmed the circuit court's section 2-615 dismissals. 2013 IL App (1st) 121142, ¶ 52.

¶ 11 We allowed plaintiffs' petitions for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2013)), and consolidated the cases for review.[1]

¶ 12                                Analysis
¶ 13                          I. Legislative Intent

¶ 14 Plaintiffs first argue that the Act does not apply to them because there is no clear expression of legislative intent that individuals convicted of a listed offense prior to the Act's effective date are subject to mandatory revocation of their licenses. Accordingly, plaintiffs contend that they fall outside the intended reach of the Act.

¶ 15 The Act provides, in part:

> "(a) When a licensed health care worker, as defined in the Health Care Worker Self-Referral Act, (1) *has been convicted* of a criminal act that requires registration under the Sex Offender Registration Act; (2) *has been convicted* of a criminal battery against any patient in the course of patient care or treatment, including any offense based on sexual conduct or sexual penetration; (3) *has been convicted* of a forcible felony; or (4) is required as a part of a criminal sentence to register under the Sex Offender Registration Act, then, notwithstanding any other provision of law to the contrary, the license of the health care worker shall by operation of law be permanently revoked without a hearing." (Emphases added.) 20 ILCS 2105/2105-165(a) (West 2012).

¶ 16 The fundamental rule of statutory construction is to ascertain and effectuate the legislature's intent. *Wisniewski v. Kownacki*, 221 Ill. 2d 453, 460 (2006). The most reliable indicator of the legislative intent is the language of the statute itself, which must be given its plain and ordinary meaning. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010). Where the language is clear and unambiguous, a court may not depart from the plain language by reading into the statute exceptions, limitations, or conditions that the legislature did not express. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 15. In determining the plain meaning, we must consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 8 (2007). The construction of a statute is a question of law that is reviewed *de novo*. *People v. Ramirez*, 214 Ill. 2d 176, 179 (2005). We also review *de novo* the dismissal of a

---

[1]One of the appellants in the appellate court, plaintiff Angelo Consiglio, M.D., did not file a petition for leave to appeal in this court.

- 4 -

complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2012)). *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006).

¶ 17 Contrary to plaintiffs' argument, the plain language of the Act clearly indicates that the legislature intended it to apply to convictions predating its effective date. The best evidence of the legislative intent is the language of the Act itself. *Solon*, 236 Ill. 2d at 440. The phrase, "has been convicted," in reference to three of the four triggering offenses in subsection 2105-165(a), is in the present perfect tense. The present perfect tense is "a verb form used to denote action beginning in the past and continuing to the present." *In re Gwynne P.*, 215 Ill. 2d 340, 357-58 (2005) (citing *Williams v. Augusta County School Board*, 445 S.E.2d 118, 120-21 (Va. 1994), and Warriner's English Grammar and Composition 148 (1965)). "[H]as been convicted," as used in the Act, thus refers to health care workers who hold the status of having been convicted of a particular offense, no matter when that status was obtained.

¶ 18 Plaintiffs maintain that section 2105-165 is ambiguous with regard to its intended reach because a reasonable interpretation of the statutory language is that it applies only to convictions occurring after the statute's enactment. See *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 511 (2007) (an ambiguous statute is one which is " 'capable of being understood by reasonably well-informed persons in two or more different senses' " (citing *People v. Jameson*, 162 Ill. 2d 282, 288 (1994))). We disagree. The only reasonable interpretation of the phrase, "has been convicted" is to refer to individuals convicted of certain offenses before or after the Act's effective date. Had the General Assembly intended to limit the Act's reach only to convictions occurring after August 20, 2011, it would have made that intent explicit. For example, the Act could have stated that a licensed health care worker who "is convicted" of a particular crime is subject to mandatory revocation of his or her license. Alternatively, the Act could have included limiting language to indicate that only convictions after a certain date would expose workers to revocation of their licenses. Instead, the plain language clearly indicates the legislative intent to subject persons to the Act without regard to the date of their convictions.

¶ 19 Plaintiffs' argument that their licenses are not subject to revocation under subsection 2105-165(a) based on the fact that other subsections of the Act are inapplicable to them is unavailing. Subsection (c) imposes certain procedural requirements which must take place when a licensed health care worker is charged with a crime listed in the Act. 20 ILCS 2105/2105-165(c) (West 2012). Subsection (e) allows revocation orders to be vacated in certain circumstances, including where criminal charges have been dropped, licensees have not been convicted of the charged offenses, or the convictions have been vacated, overturned, or reversed. 20 ILCS 2105/2105-165(e) (West 2012). However, because one part of the statute does not apply to plaintiffs does not mean that other parts do not. Even if none of the provisions in subsections (c) and (e) applies to plaintiffs, it does not mean that the general rule in subsection (a) does not apply to them. We find that the plain language of the Act clearly applies to convictions imposed prior to the Act's effective date.

¶ 20 II. Substantive Due Process

¶ 21 A. Retroactivity

¶ 22 Plaintiffs next contend that, even if they fall within the plain language of the Act based on their prior convictions, the application of section 2105-165 to them is impermissibly

- 5 -

retroactive in violation of their substantive due process rights. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. A statute is presumed to be constitutional, and the party challenging the statute bears the burden of demonstrating its invalidity. *Allen v. Woodfield Chevrolet, Inc.*, 208 Ill. 2d 12, 21 (2003). A court has a duty to construe a statute in a manner that upholds its validity and constitutionality if it can reasonably be done. *People v. Hollins*, 2012 IL 112754, ¶ 13. The constitutionality of a statute and whether a party's constitutional rights have been violated are reviewed *de novo*. *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 93 (2010).

¶ 23    In determining whether a statute may be applied retroactively, as opposed to prospectively only, this court has adopted the approach set forth by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994). *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 38 (2001). Under *Landgraf*, if the legislature has clearly prescribed the temporal reach of the statute, the legislative intent must be given effect absent a constitutional prohibition. Where there is no express provision regarding the temporal reach, the court must determine whether applying the statute would have a "retroactive" or "retrospective" impact; that is, "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. Where there would be no retroactive impact, as defined in *Landgraf*, the court may apply the statute to the parties. *Commonwealth Edison Co.*, 196 Ill. 2d at 38. However, if applying the statute would have a retroactive impact, then the court must presume that the legislature did not intend that it be so applied. *Id.*

¶ 24    Applying the *Landgraf* test to the Act, we find that the legislature plainly indicated the temporal reach by stating that the license of a health care worker who has been convicted of one of the triggering offenses shall by operation of law be permanently revoked without a hearing. 20 ILCS 2105/2105-165(a) (West 2012). The Act provides that revocation of health care licenses pursuant to its provisions takes place only after its effective date. Thus, the Act is solely prospective and not retroactive in its operation. That being so, there is no need to turn to the alternative statutory sources suggested by plaintiffs in order to define the temporal reach of the Act. Section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2012)) controls by default only where the legislature has not clearly defined the temporal reach of a statute. *Caveney v. Bower*, 207 Ill. 2d 82, 92-93 (2003). If the legislature has clearly indicated the temporal reach of a provision, section 4 is inapplicable. *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 406-07 (2009). The savings clause of the Civil Administrative Code (20 ILCS 5/5-95 (West 2012)), is irrelevant to our analysis for the same reason.

¶ 25    Despite the plain language indicating a clear legislative intent that the Act operate prospectively, plaintiffs argue that the Act is retroactive as applied to them because their health care licenses were revoked as a consequence of their prior convictions. We reject this argument and agree with the appellate court that the Act's reliance on convictions predating its enactment does not render it retroactive as that term has been defined in case law. 2013 IL App (1st) 121142, ¶ 15. "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, [citation], or upsets expectations based in prior law." *Landgraf*, 511 U.S. at 269; see also *Cox v. Hart*, 260 U.S. 427, 435 (1922) ("A statute is not made retroactive merely because it draws upon antecedent facts for its operation.").

¶ 26 Although the Act relies upon antecedent facts—plaintiffs' convictions—for its operation, it does not apply retroactively to them. Section 2105-165 defines new *per se* eligibility requirements with which licensees must comply in order to practice their health care professions in Illinois. The Act does not "reach back in time" to change the criminal penalties imposed on plaintiffs' convictions, nor does it render unlawful conduct that was lawful at the time it was committed. *Mohammad v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 122151, ¶ 14. Moreover, the Act has no effect on plaintiffs' right to practice their health care professions prior to August 20, 2011, the Act's effective date. 2013 IL App (1st) 121142, ¶ 16. See also *Bhalerao v. Illinois Department of Financial & Professional Regulations*, 834 F. Supp. 2d 775, 783 (N.D. Ill. 2011) (subsection 2105-165(a) found not to be retroactive where it did not affect the plaintiff's right to practice medicine prior to its enactment, for example, by divesting him of any profits earned during that time, or by deeming unauthorized his practice of medicine during the time between his conviction and the revocation of his license). An amended statute which creates new requirements to be imposed in the present or future, and not in the past, does not have a retroactive impact on the parties. *Wisniewski v. Kownacki*, 221 Ill. 2d 453, 462-63 (2006). Subsection 2105-165(a) affects only the present and future eligibility of plaintiffs to continue to use their health care licenses. The Act's impact on plaintiffs, thus, is solely prospective and not impermissibly retroactive within the meaning of the test articulated in *Landgraf*.

¶ 27 B. Right to a Medical License

¶ 28 Plaintiffs next contend that the Act is unconstitutional because it deprives them of a fundamental property right, their health care licenses, in violation of substantive due process. When a statute is challenged based upon substantive due process grounds, the threshold question is whether the statute restricts or regulates a fundamental right. *Potts v. Illinois Department of Registration & Education*, 128 Ill. 2d 322, 329 (1989); *Gersch v. Department of Professional Regulation*, 308 Ill. App. 3d 649, 655 (1999). A statute which restricts a fundamental right must be examined under strict scrutiny. *Potts*, 128 Ill. 2d at 329. Under strict scrutiny analysis, legislation which significantly interferes with the exercise of a fundamental right will be upheld only if it is necessary to promote a compelling state interest and is narrowly tailored to effectuate only that interest. *Id.* Legislation which does not affect a fundamental right will be examined under the rational basis test, which requires a court to uphold a statute if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor discriminatory. *Id.*

¶ 29 While this court has held that "a license to practice medicine is a 'property right,' within the meaning of the constitutional guarantees of due process of law" (*Smith v. Department of Registration & Education*, 412 Ill. 332, 340-41 (1952)), this simply means that proceedings to revoke medical licenses must comply with procedural due process guarantees. *Id.*; *Wilson v. Department of Professional Regulation*, 344 Ill. App. 3d 897, 907 (2003). The right to pursue a profession is not a fundamental right for substantive due process purposes, however, and legislation infringing upon that right need only be examined using the rational basis test. *Potts*, 128 Ill. 2d at 330. In applying the rational basis test, we must identify the public interest that the statute was intended to protect, determine whether the statute bears a reasonable relationship to that interest, and verify whether the means chosen to protect that interest are reasonable. *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 147 (2003). As long as there is a

reasonably conceivable set of facts showing that the legislation is rational, it must be upheld. *Id.* Whether the statute is wise or sets forth the best means to achieve the desired result are matters for the legislature, not the courts. *Id.*; *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 125-26 (2004).

¶ 30      The public interest underlying the Act is the protection of the public's health, safety, and welfare, as set forth in section 2105-10 of the Department of Professional Regulation Law:

> "Legislative declaration of public policy. The practice of the regulated professions, trades, and occupations in Illinois is hereby declared to affect the public health, safety, and welfare of the People of this State and in the public interest is subject to regulation and control by the Department of Professional Regulation.
>
>      It is further declared to be a matter of public interest and concern that standards of competency and stringent penalties for those who violate the public trust be established to protect the public from unauthorized or unqualified persons representing one of the regulated professions, trades, or occupations ***." 20 ILCS 2105/2105-10 (West 2012).

¶ 31      To the extent that plaintiffs argue that their medical licenses are "vested" rights which are protected from any legislative interference, they are incorrect. Medical licenses are subject to ongoing State legislation intended to promote the general welfare. *Rios v. Jones*, 63 Ill. 2d 488, 497 (1976). The legislature has broad regulatory powers to set licensing requirements which are rationally related to the legitimate state interest of protecting the public from unqualified medical practitioners. *Potts*, 128 Ill. 2d at 330-33; *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280-82 (2003); *Carter-Shields v. Alton Health Institute*, 201 Ill. 2d 441, 462 (2002). In addition, the legislature has a duty to require that applicants for medical licenses possess good moral character. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 91 (1992). Accordingly, we find that the Act, which bars health care workers previously convicted of certain criminal offenses involving their patients from practicing their professions, bears a reasonable relationship to the legitimate state interest of regulating the medical profession for the protection of the public.

¶ 32      We are cognizant that application of the Act to plaintiffs may yield harsh results by permanently barring plaintiffs from using their medical licenses or practicing their chosen professions. However, it is not a matter for this court to question the wisdom of the General Assembly in establishing licensing requirements, nor to determine whether it has chosen the best available means to achieve its desired result. *People v. Shephard*, 152 Ill. 2d 489, 503 (1992); *Potts*, 128 Ill. 2d at 333. "It is well settled that the General Assembly has wide regulatory power with respect to the health-care professions, and it is within the broad discretion of the legislature ' "to determine not only what the public interest and welfare require, but to determine the measures needed to secure such interest." ' " *Cryns*, 203 Ill. 2d at 280 (quoting *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 41 (2001), quoting *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 364 (1985)). It is the responsibility of the legislature, not the courts, to balance plaintiffs' interests in the practice of their health care professions against the State's interests in regulating medical licenses and protecting the public. *Potts*, 128 Ill. 2d at 333 (citing *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487 (1955)). Section 2105-165 imposes mandatory revocation of health care licenses on plaintiffs based on their convictions of certain criminal offenses during the

course of patient care or treatment. There is no question that the means chosen by the legislature is rationally related to the goal of protecting the public health, safety and welfare and is a valid exercise of the State's power to regulate health care professionals. Plaintiffs have not alleged a substantive due process violation based on the revocation of their health care licenses pursuant to the Act.

¶ 33                                    C. Right of Repose in Medical Practice Act

¶ 34        Plaintiffs argue that the Act impairs their vested right of repose to be free from discipline imposed by the Department as a result of their prior convictions. They rely on the rule that "once a claim is time-barred, it cannot be revived through subsequent legislative action without offending the due process protections of our state's constitution." *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 411 (2009). Plaintiffs acknowledge that the Act itself does not contain a statute of limitations or statute of repose. They contend, however, that section 22 of the Medical Practice Act of 1987 (225 ILCS 60/22 (West 2012)), afforded them a "vested" right of repose which shielded them from the revocation of their medical licenses by the Department once the statutory repose period had passed.[2] The Medical Practice Act gives the Department discretion to revoke, suspend, place on probation, reprimand, refuse to issue or renew, or take any other disciplinary or non-disciplinary action against the license of a medical professional, upon any of the grounds enumerated in section 22 of the Medical Practice Act. 225 ILCS 60/22(A) (West 2012). The listed grounds include "[i]mmoral conduct in the commission of any act including, but not limited to, commission of an act of sexual misconduct related to the licensee's practice." 225 ILCS 60/22(A)(20) (West 2012). Under the statute of limitations in the version of the Medical Practice Act in effect at the time of plaintiffs' convictions, any disciplinary action taken by the Department must have been commenced within three years after receiving notice of an allegation of misconduct or notice of a conviction. 225 ILCS 60/22(A) (West 1998). The repose provision at that time provided that no action could be commenced by the Department more than five years after the date of the incident or action alleged to have violated the Medical Practice Act. *Id.* For purposes of Jafari's and Khaleeluddin's licenses, the three-year limitations period and five-year repose period had expired prior to section 2105-165 being enacted.[3]

¶ 35        Plaintiffs' contention that the Department was time-barred from revoking their licenses pursuant to subsection 2105-165(a), based on the limitations and repose provisions in the Medical Practice Act, is misguided. The cases cited by plaintiffs do not support their position. In *M.E.H. v. L.H.*, 177 Ill. 2d 207, 218 (1997), the court held that a party who was shielded from liability based on the expiration of a statute of repose had a right to rely on the time-bar defense even after the legislature repealed the repose provision. In other cases, the courts held that legislation enacted specifically to revive time-barred actions violated the due process rights of defendants and was not allowed. *Sepmeyer v. Holman*, 162 Ill. 2d 249, 255-56 (1994);

---

[2]Plaintiffs' reference to a "vested" right of repose is somewhat misguided. In *Doe A.*, we held that *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 47 (2001), "switched the focus of the first step of the retroactivity analysis from 'vested rights' to legislative intent," but did not overturn the established rule that a time-barred claim may not be revived through subsequent legislative action. *Doe A.*, 234 Ill. 2d at 411.

[3]This argument does not apply to Hayashi, who was convicted in 2007.

*Wilson v. All-Steel, Inc.*, 87 Ill. 2d 28, 40-42 (1981) (citing *Board of Education of Normal School District v. Blodgett*, 155 Ill. 441 (1895)). By contrast, here, the legislature did not affect the statutory limitations or repose provisions in section 22 of the Medical Practice Act when it enacted section 2105-165 of the Department of Professional Regulation Law. Plaintiffs' rights to their repose defenses were not changed or removed. The plain language of the Medical Practice Act states that the limitations and repose provisions apply only to proceedings governed by the Medical Practice Act. 225 ILCS 60/22(A) (West 2012). Plaintiffs' licenses were not revoked pursuant to the Medical Practice Act. The time-bar defenses on which plaintiffs rely have no applicability to revocation proceedings under section 2105-165, which does not contain a statute of limitations or statute of repose.

¶ 36     Plaintiffs' claim that repose defenses are "vested rights" which cannot be changed or impaired through enacting new licensing requirements in a separate statutory code section is akin to arguing that a license is a "vested" right free from an expectation of legislative interference. As we have explained, professional licenses are subject to ongoing regulation by the legislature within the bounds of substantive due process. See *Potts*, 128 Ill. 2d at 333. In this case, the legislature has chosen to regulate the medical profession by providing that health care professionals convicted of certain criminal offenses are *per se* unfit to practice their professions and are subject to mandatory revocation of their licenses. Section 2105-165 is not governed by the limitations and repose provisions in section 22 of the Medical Practice Act.

¶ 37                                III. Procedural Due Process

¶ 38     Plaintiffs next contend that the mandatory, permanent revocation of their licenses without a hearing pursuant to the Act is unconstitutional on its face in that it violates procedural due process. A statute is facially invalid only if no set of circumstances exists under which it would be valid. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008).

¶ 39     The Act expressly states that no hearing is allowed prior to the mandatory license revocation proceedings. 20 ILCS 2105/2105-165(a) (West 2012). The administrative regulations provide that, upon the mailing of a notice from the Department indicating an intent to issue a permanent revocation order, licensees have 20 days to present a written response contesting the Department's action. 68 Ill. Adm. Code 1130.100(b) (2013). Any written response must include supporting documentation and shall only be considered by the Department for one of the following reasons: (1) that the licensee has been incorrectly identified as the person with the conviction; (2) that the licensee's conviction has been vacated, overturned, or reversed, or a pardon has been granted; or (3) that the licensee's conviction is not a disqualifying conviction. *Id.* Once a permanent revocation order has been issued, the only recourse for licensees is to request that the revocation order be vacated on the grounds that: (1) the charges upon which the revocation order is based have been dropped; (2) the licensee has not been convicted of the charges; or (3) the licensee's conviction upon which the revocation order is based has been vacated, overturned, or reversed. 20 ILCS 2105/2105-165(e) (West 2012).

¶ 40     Administrative proceedings are governed by the fundamental principles of due process of law. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92 (1992). Due process is a flexible concept which "requires only such procedural protections as fundamental principles of justice and the particular situation demand." *Id.* An administrative

- 10 -

proceeding need not involve a hearing in the nature of a judicial proceeding in order to comply with due process. *Id.* Courts should consider the following factors in evaluating a due process claim: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest and the value, if any, of any additional or substitute procedural safeguards; and (3) the government's interest, including the administrative burdens that any additional or substitute procedural safeguards would entail. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 201 (2009); *People ex rel. Eppinga v. Edgar*, 112 Ill. 2d 101, 107 (1986) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

¶ 41    The private interest affected by the Act is a medical or other health care license, which this court has held is a property right within the meaning of the constitutional guarantees of due process of law. *Smith v. Department of Registration & Education*, 412 Ill. 332, 340-41 (1952). Under the second factor, we agree with the appellate court below that the risk that a license may be revoked erroneously is not great. 2013 IL App (1st) 121142, ¶ 19. "[T]he Act operates only upon a conviction, the existence of which is a matter of public record which can be established without a fact-finding hearing." *Id.* See also *Eppinga*, 112 Ill. 2d at 108-10 (court held that the risk of the erroneous deprivation of a driver's license in DUI case was low "because the basis of the [license] revocation, *i.e.*, the suspensions and convictions, were facts simply recorded and were not by their nature subject to subjective or differing interpretations" (citing *Dixon v. Love*, 431 U.S. 105, 113 (1977))). To protect themselves from erroneous revocation due to clerical error, licensees may file a written objection under one of the enumerated grounds within 20 days of the Department's notice of intent (68 Ill. Adm. Code 1130.100(b) (2013)) or may request vacation of a revocation order if their conviction has been vacated or overturned. 20 ILCS 2105/2105-165(e) (West 2012). Beyond that, section 2105-165 simply does not allow the Department to inquire into any of the circumstances surrounding licensees' convictions. The fact of the conviction itself triggers the revocation of a health care license under the Act. Under the third due process factor, the State's interest in protecting the health and safety of its citizens by preventing individuals convicted of sexual offenses or batteries against their patients from practicing medicine is substantial. Any additional procedures would add to the Department's administrative and fiscal burdens with no added benefit to plaintiffs.

¶ 42    Where a licensee concedes the fact of a conviction for one of the qualifying offenses listed in the Act, and does not claim eligibility for vacation of a revocation order based on any of the grounds listed in subsection (e) (20 ILCS 2105/2105-165(e) (West 2012)), there are no issues to be resolved at a prerevocation hearing. Plaintiffs contend that a fair hearing would allow licensees to contest their innocence to the charges upon which their convictions were based, argue that the judge or jury in their criminal case reached an incorrect result, or claim bias, concealed motive, or ineffective assistance of counsel. We presume, however, that licensees convicted of a qualifying offense have received due process in the underlying criminal proceedings, during which they had the opportunity to contest the factual and legal bases for their criminal charges, present evidence, question witnesses, and present grounds for appeal. Plaintiffs do not suggest any additional grounds which could have been raised or evidence which could have been presented at a prerevocation hearing. After considering the relevant factors, we find that plaintiffs have received all of the process that they are due and have failed to allege a procedural due process violation either facially or as applied.

¶ 43    A separate argument related to procedural due process was raised for the first time in one of plaintiffs' reply briefs and addressed again at oral arguments in this case. Plaintiff contends that a prerevocation hearing is necessary in order to establish the existence of a question of fact, *i.e.*, whether a criminal battery was committed "against any patient in the course of patient care or treatment" (20 ILCS 2105/2105-165(a)(2) (West 2012)). Plaintiffs have forfeited this argument by failing to raise it in their petitions for leave to appeal or in their opening briefs. Accordingly, the argument was not properly preserved for our review. See *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶¶ 22-23; Ill. S. Ct. R. 315(c)(3) (eff. July 1, 2013) (a petition for leave to appeal shall contain "a statement of the points relied upon in asking the Supreme Court to review the judgment of the Appellate Court"); Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (points not argued in the appellant's brief "are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing").

¶ 44                                   IV. *Res Judicata*

¶ 45    Plaintiffs argue that the revocation proceedings pursuant to the Act are barred by the doctrine of *res judicata* based on the Department's previous decisions to discipline their licenses based on their criminal convictions.[4] They contend that the Department's disciplinary orders were judgments which barred the Department from further punishing them for the same conduct. "*Res judicata* promotes judicial economy by preventing repetitive litigation and also protects parties from being forced to bear the unjust burden of relitigating essentially the same case." *Arvia v. Madigan*, 209 Ill. 2d 520, 533 (2004). For *res judicata* to apply, three requirements must be met: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of causes of action; and (3) identity of parties or their privies. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 470-71 (2008). The party invoking the doctrine bears the burden of showing that *res judicata* applies. *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 41. Our review is *de novo*. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 565 (2000).

¶ 46    Even if we were to assume that the previous disciplinary proceedings brought by the Department pursuant to the Medical Practice Act were "judicial in nature," and therefore constituted a final judgment on the merits rendered by a court of competent jurisdiction (*Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 56), plaintiffs must fail because there is no identity of causes of action between the two proceedings. A cause of action is defined by the facts which give rise to a right to relief. *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 10. "[S]eparate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998). "The rule in Illinois is that *res judicata* extends only to the facts and conditions as they were at the time a judgment was rendered. When new facts or conditions intervene before a second action, establishing a new basis for the claims and defenses of the parties respectfully, the issues are no longer the same, and the former judgment cannot be pleaded as a bar in a subsequent action." *Northern Illinois Medical Center v. Home State Bank of Crystal Lake*, 136 Ill. App. 3d 129, 144 (1985) (citing *Ropacki v. Ropacki*, 354 Ill. 502,

---

[4]This argument does not apply to Jafari, who was not disciplined by the Department as a result of his conviction.

506-07 (1933), and *Chicago Title & Trust Co. v. County of Cook*, 120 Ill. App. 3d 443, 454 (1983)).

¶ 47 *Res judicata* does not apply in the circumstances presented by plaintiffs because the facts, conditions, and issues involved in the disciplinary proceedings pursuant to the Medical Practice Act were different from those in the revocation proceedings. At the time the Department imposed its disciplinary orders, Illinois law did not require revocation for the particular offenses listed in the Act. The Department could not have enforced section 2105-165 against plaintiffs' licenses because the Act did not exist. The revocation proceedings simply do not qualify as a "relitigation" of the same case. See *Arvia*, 209 Ill. 2d at 534.

¶ 48 Plaintiffs assert that their prior administrative discipline and reinstatement of their licenses created a "judicially vested right" in their entitlement to practice medicine upon which they had a right to rely. See *People ex rel. Allied Bridge & Construction Co. v. McKibbin*, 380 Ill. 63, 66-67 (1942) (right to transfer tax credits arising under a statute and decreed by a court of competent jurisdiction created a vested right upon which the petitioners could rely despite a subsequent change in the law disallowing the credits). Unlike the circumstances in *McKibbin*, however, there was no vested right created by the prior disciplinary proceedings. As we have established, plaintiffs have no vested right in their health care licenses, nor do they have a right to be free from subsequent legislation which changes the eligibility standards for licenses. While *res judicata* may bar the Department from disciplining plaintiffs' licenses again under the Medical Practice Act based on their convictions, *res judicata* does not preclude the Department from revoking plaintiffs' licenses pursuant to section 2105-165.

¶ 49 V. Additional Arguments

¶ 50 Plaintiffs' remaining arguments based on double jeopardy, bill of attainder, *ex post facto*, and "takings" grounds are mentioned briefly in only one of plaintiffs' briefs. The arguments are not developed. We decline to address these issues since the parties have failed to apply these constitutional doctrines to the circumstances of their cases. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (argument in an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"); *Bartlow v. Costigan*, 2014 IL 115152, ¶ 52 (holding that arguments raised in a cursory fashion which are not fully briefed and argued are forfeited by the parties); *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010) (noting that an issue "merely listed or included in a vague allegation of error is not 'argued' " and does not satisfy Supreme Court Rule 341(h)).

¶ 51 CONCLUSION

¶ 52 For the foregoing reasons, we affirm the judgment of the appellate court, which affirmed the circuit court's judgments holding that plaintiffs' complaints were properly dismissed pursuant to section 2-615 of the Code of Civil Procedure.

¶ 53 Affirmed.