# Illinois Official Reports

## Appellate Court

---

**Shushunov v. Illinois Department of Financial & Professional Regulation,**
**2017 IL App (1st) 151665**

---

| | |
|---|---|
| Appellate Court Caption | SERGEI SHUSHUNOV, M.D., Plaintiff-Appellant, v. THE ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, and JAY STEWART, in His Official Capacity as Director of the Division of Professional Regulation for the Illinois Department of Financial and Professional Regulation, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-1665 |
| Filed | February 24, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-8189; the Hon. Rita Novak, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stein Law Offices, of Des Plaines (Alon Stein, of counsel), for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for appellees. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Hall and Reyes concurred in the judgment and opinion.


**OPINION**

¶ 1        Plaintiff, Sergei Shushunov, M.D., appeals the circuit court's order dismissing his action for declaratory and injunctive relief against defendants, the Illinois Department of Financial and Professional Regulation (Department) and Jay Stewart, the director of the Department's division of professional regulation, in which he sought relief following the revocation of his medical license due to a forcible felony conviction. Plaintiff contends that section 2105-165(a)(3) of the Civil Administrative Code of Illinois (20 ILCS 2105/2105-165(a)(3) (West 2012)), also known as the Illinois Department of Professional Regulation Law (Act), is unconstitutional on its face and as applied both procedurally and substantively. Plaintiff additionally contends that the regulation defining "forcible felony" (68 Ill. Adm. Code 1130.120, adopted at 37 Ill. Reg. 1192 (eff. Feb. 1, 2013)) (Regulation) was applied retroactively and exceeds the scope of the Act. Finally, plaintiff contends the Act and/or the Regulation violate *ex post facto* laws, constitute double jeopardy, constitute an irrebutable presumption, and violate the bill of attainder.

¶ 2        Section 2105-165(a) of the Act mandates the permanent revocation, without a hearing, of the license of a healthcare worker who has been convicted of certain criminal offenses, including a criminal act that requires registration under the Sex Offender Registration Act; a criminal battery against any patient in the course of patient care or treatment, including any offense based on sexual conduct or sexual penetration; a forcible felony; and a criminal sentence that requires registration under the Sex Offender Registration Act. 730 ILCS 150/1 *et seq.* (West 2012).

¶ 3        Based on the following, we affirm.


¶ 4                                FACTS

¶ 5        On September 27, 2012, plaintiff pled guilty to attempted armed robbery (720 ILCS 5/8-4, 18-2(a)(2) (West 2010)) and aggravated battery (720 ILCS 5/12-4 (West 2010)) in connection with an incident involving his wife's boyfriend. At the time of the incident, plaintiff was a physician licensed in Illinois. Plaintiff and his wife were in the process of divorce. In relevant part, in May 2011, plaintiff entered his wife's boyfriend's home, specifically, his bedroom, where plaintiff found the man speaking to plaintiff's wife on the phone. Plaintiff, who was armed with a handgun and was wearing black leather gloves at the time, shouted, "My name is Sergei. Leave my wife alone!" Plaintiff then punched the boyfriend multiple times in the face while pointing the handgun at his abdomen. Plaintiff instructed the boyfriend to remove the SIM card from his phone. In response, the boyfriend threw his phone on the bed and never saw it again. The boyfriend's two daughters, ages 10 and 14, were also in the home at the time of the incident. Plaintiff was sentenced to two years of probation with the first six months spent in Cook County jail.

¶ 6        In March 2013, defendants sent plaintiff a notice of intent to permanently revoke plaintiff's medical license pursuant to section 2105-165(a)(3) of the Act based on his forcible felony conviction.

¶ 7        On March 26, 2013, plaintiff filed a complaint and a motion for a temporary restraining order (TRO) requesting to enjoin defendant from summarily revoking his license without a hearing. Plaintiff argued, *inter alia*, that the automatic revocation statute was overbroad, over-inclusive, and unconstitutional where it deprived him of having an administrative law judge (ALJ) consider the facts and circumstances surrounding his guilty plea, and that the automatic revocation provision of section 2105-165(a)(3) of the Act did not apply to him because the Regulation defining "forcible felony" (68 Ill. Adm. Code 1130.120, adopted at 37 Ill. Reg. 1192 (eff. Feb. 1, 2013)) was not in effect at the time of his guilty plea.

¶ 8        On March 28, 2013, the circuit court held a hearing on the TRO request. During the hearing, the circuit court, in part, stated the following:

> "[t]his case, unlike the other trial court decisions [applying and analyzing the statute at issue][,] is not patient related conduct, but conduct that is entirely not patient related. *** the statute is potentially over inclusive in terms of what the legislature was trying to accomplish. *** it undermines the Department's arguments about the need to protect patients that the Department would wait nearly six months to issue this Notice."

Ultimately, the circuit court granted plaintiff's requested TRO, finding he was likely to succeed on the merits of his constitutional claims. The court additionally granted plaintiff leave to file an amended complaint. On April 3, 2013, the court entered a written order memorializing its findings. In the written order, the court expressly stated that plaintiff "demonstrated various fair questions" as to the application of section 2105-165(a) of the Act and the Regulation in terms of whether the automatic revocation provision for forcible felonies under the Act and as defined by the Regulation was overbroad and whether, under the facts of the case, the automatic revocation of plaintiff's medical license without a hearing was unconstitutional as applied.

¶ 9        On April 18, 2013, plaintiff filed his first amended complaint. In response, defendants filed a motion for judgment on the pleadings or, in the alternative, a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)). As a basis for support, defendants cited *Consiglio v. Illinois Department of Financial & Professional Regulation*, 2013 IL App (1st) 121142, which recently rejected similar constitutional challenges to section 2105-165(a) of the Act. Plaintiff replied that *Consiglio* was inapposite because his conviction was not based on patient or sex-related offenses. Ultimately, the circuit court stayed the matter until the Illinois Supreme Court reached its own decision in *Consiglio*.[1]

¶ 10       On January 2, 2014, defendants filed a motion requesting that the circuit court either vacate the stay or, in the alternative, the temporary restraining order, citing *Rodrigues v. Quinn*, 2013 IL App (1st) 121196, for support. The circuit court denied defendants' motion, leaving both the stay and TRO in place. Then, when the supreme court issued *Hayashi*, which affirmed *Consiglio*, the circuit court granted plaintiff leave to file a second amended complaint.

_____

[1]The supreme court's decision can be found at *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, because Consiglio did not participate in the supreme court appeal.

¶ 11        On December 22, 2014, plaintiff filed his second amended complaint, the subject of which underlies this appeal. In the second amended complaint, plaintiff sought a declaratory judgment that (1) section 2105-165(a)(3) is unconstitutional on its face and overbroad because there are no set of circumstances under which the automatic revocation provision would be valid for individuals convicted of forcible felonies; (2) section 2105-165(a)(3) is overbroad, over-inclusive, and unconstitutional as applied to him where it prohibits his ability to seek an agreement with defendant to never practice medicine in Illinois and where the statute has no rational relationship to a legitimate purpose; (3) application of the Regulation defining "forcible felony" violated *ex post facto* laws where it was improperly retroactively applied; (4) the retroactive application of the Regulation violates the statute on statutes; (5) the retroactive application of the Regulation constitutes double jeopardy, as it was not in effect when he pled guilty; (6) section 2105-165(a) and the Regulation constitute an impermissible bill of attainder; and (7) section 2105-165(a) and the Regulation create an improper, irrebuttable presumption. Defendants responded by filing a section 2-615 motion to dismiss plaintiff's second amended complaint.

¶ 12        Prior to the hearing on defendants' motion to dismiss, plaintiff filed a motion to stay the proceedings or to continue the hearing date pending the disposition of a proposed amendment to section 2105-165 of the Act. The motion was denied.

¶ 13        Following oral arguments, on June 15, 2015, the circuit court dissolved the April 3, 2013, temporary restraining order and dismissed plaintiff's complaint with prejudice. In so doing, the circuit court found section 2105-165(a) was not unconstitutional on its face or as applied to plaintiff, under either procedural or substantive due process principles. The circuit court also dismissed plaintiff's retroactivity challenge to the Regulation, as well as his remaining claims. In addition, the court denied plaintiff's emergency motion to stay the enforcement and for maintenance of the injunctive relief. This appeal followed.

¶ 14                                    ANALYSIS

¶ 15        Plaintiff challenges the constitutionality of section 2105-165(a)(3) of the Act. Because plaintiff's second amended complaint was dismissed in response to defendants' section 2-615 motion, we must determine whether the dismissed claims state causes of action upon which relief may be granted. *Consiglio*, 2013 IL App (1st) 121142, ¶ 8. In considering the legal sufficiency of the complaint alleging that the statute is unconstitutional, we must take as true all well-pleaded facts, as well as draw all reasonable inferences from those facts, while viewing the allegations in a light most favorable to plaintiff. *Id.* ¶¶ 8-9. We review the dismissal of plaintiff's complaint *de novo*. See *id.* ¶ 8.

¶ 16        Section 2105-165(a) of the Act expressly provides:

> "(a) When a licensed health care worker, as defined in the Health Care Worker Self-Referral Act, (1) has been convicted of a criminal act that requires registration under the Sex Offender Registration Act; (2) has been convicted of a criminal battery against any patient in the course of patient care or treatment, including any offense based on sexual conduct or sexual penetration; (3) has been convicted of a forcible felony; or (4) is required as part of a criminal sentence to register under the Sex Offender Registration Act, then, notwithstanding any other provision of law to the contrary, the license of the health care worker shall by operation of law be permanently revoked without a hearing." 20 ILCS 2105/2105-165(a) (West 2012).

- 4 -

Section 2105-165(g) of the Act further provides that "[t]he Department may adopt rules necessary to implement this Section." 20 ILCS 2105/2105-165(g) (West 2012).

¶ 17 Effective February 1, 2013, the Illinois General Assembly drafted title 68, section 1130.120 of the Illinois Administrative Code (Administrative Code), which provides: "[a] 'forcible felony' for purposes of Section 2105-165 of the [Act] *** is one or more of the following offense (section numbers are from the Criminal Code of 2012 [720 ILCS 5/1-1 *et seq.*]])." 68 Ill. Adm. Code 1130.120, adopted at 37 Ill. Reg. 1192 (eff. Feb. 1, 2013). In relevant part, the provision listed aggravated battery (section 12-3.05) and armed robbery (section 18-2), as well as attempt (section 8-4) of any of the specified offenses.

¶ 18 Plaintiff's central contentions are: (1) that section 2105-165(a)(3) violates procedural due process and, therefore, is unconstitutional on its face and as applied to him because it fails to offer a hearing prior to the automatic revocation of a medical license for a health care worker convicted of a forcible felony; (2) that section 2105-165(a)(3) violates substantive due process and, therefore, is unconstitutional on its face and as applied to him because it is overbroad in its application of revoking all medical licenses for health care workers convicted of a forcible felony without consideration of the circumstances of the conviction; and (3) that the Regulation defining "forcible felony" does not provide for retroactive application and exceeds the scope of the Act by including attempted forcible felonies.

¶ 19 In considering all of plaintiff's contentions, we must bear in mind a number of legal premises. Importantly, a statute is presumed to be constitutional. *Hayashi*, 2014 IL 116023, ¶ 22. As a result, the party challenging the constitutionality of a statute bears the burden of demonstrating its invalidity. *Id.* "A court has a duty to construe a statute in a manner that upholds its validity and constitutionality if it can reasonably be done." *Id.* A statute is facially invalid only if no set of circumstances exists under which the statute would be valid. *Id.* ¶ 38. We review *de novo* the constitutionality of a statute and whether a party's constitutional rights have been violated. *Id.* ¶ 22.

¶ 20 Before moving on to plaintiff's substantive contentions, we first respond to his attack on the circuit court for having found the legal landscape had changed from the time plaintiff was awarded his TRO until the time of the final dismissal hearing. The fact is that the legal landscape had become settled in terms of the constitutionality of section 2105-165(a) between the April 3, 2013, TRO and the June 15, 2015, dismissal hearing. See *Consiglio*, 2013 IL App (1st) 121142; *Rodrigues*, 2013 IL App (1st) 121196; *Hayashi*, 2014 IL 116023. That said, those cases did not involve subsection (a)(3) of the Act; therefore, we proceed in analyzing plaintiff's contentions.

¶ 21 I. Procedural Due Process

¶ 22 Plaintiff first contends he should have been entitled to a hearing prior to the automatic revocation of his medical license.

¶ 23 Administrative proceedings are governed by the principles of due process. *Hayashi*, 2014 IL 116023, ¶ 40. Due process is a flexible concept requiring " 'only such procedural protections as fundamental principles of justice and the particular situation demand.' " *Id.* (quoting *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92 (1992)). "Procedural due process does not necessarily require a proceeding that is akin to a judicial proceeding; nor does it require a hearing in every instance a government action impairs a private interest." *Consiglio*, 2013 IL App (1st) 121142, ¶ 18. The following factors should be

considered by a court in evaluating a procedural due process claim: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the value, if any, of any additional or substitute procedural safeguards; and (3) the government's interest, including the administrative burdens that any additional or substitute procedural safeguards would entail. *Hayashi*, 2014 IL 116023, ¶ 40 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *Consiglio*, 2013 IL App (1st) 121142, ¶ 18.

¶ 24    This court and the supreme court have determined that section 2105-165(a) of the Act does not violate procedural due process in *Consiglio* and *Hayashi*, respectively. Although the court in neither case expressly addressed subsection (a)(3), *i.e.*, "forcible felony," we find the conclusions equally apply to subsection (a)(3) as well.

¶ 25    Applying the first of the due process factors, there is no dispute that a professional medical license constitutes a property interest. *Hayashi*, 2014 IL 116023, ¶ 41; *Consiglio*, 2013 IL App (1st) 121142, ¶ 19.

¶ 26    Under the second factor, we agree with both courts that, in this case as well, the risk that a license may be revoked erroneously under the Act is not great. *Hayashi*, 2014 IL 116023, ¶ 41; *Consiglio*, 2013 IL App (1st) 121142, ¶ 19. More specifically, the Act operates only upon a conviction, which can be established without a fact-finding hearing where the conviction is a matter of public record. *Hayashi*, 2014 IL 116023, ¶ 41; *Consiglio*, 2013 IL App (1st) 121142, ¶ 19. In this case, the existence of plaintiff's conviction of forcible felonies was a matter of public record. The Act provides safeguards for a plaintiff, such that a notice is issued, stating that his license is being revoked and advising the plaintiff of the ability to challenge the revocation by raising a defense disputing the existence of a triggering event. 20 ILCS 2105/2105-165(e) (West 2012). Here, plaintiff did not raise such a challenge, disputing the existence of his forcible felonies. Instead, plaintiff brought the underlying lawsuit. Beyond the protections enumerated by the Act, "section 2105-165 simply does not allow the Department to inquire into any of the circumstances surrounding licensees' convictions." *Hayashi*, 2014 IL 116023, ¶ 41. Moreover, "[a] criminal conviction has been described as 'conclusive evidence' of both bad character and that the convict committed the offense." *Bhalerao v. Illinois Department of Financial & Professional Regulations*, 834 F. Supp. 2d 775, 787 (N.D. Ill. 2011).

¶ 27    As for the third factor, there is a strong government interest in protecting the public from health care workers with forcible felony convictions. See *Hayashi*, 2014 IL 116023, ¶ 41; *Consiglio*, 2013 IL App (1st) 121142, ¶ 19. Furthermore, a hearing requirement would impose additional burdens on defendants without corresponding benefits to plaintiff. "We presume *** that licensees convicted of a qualifying offense have received due process in the underlying criminal proceedings, during which they had the opportunity to contest the factual and legal bases for their criminal charges, present evidence, question witnesses, and present grounds for appeal." *Hayashi*, 2014 IL 116023, ¶ 42. As a result, due process does not mandate additional procedures in the form of a hearing under the circumstances of this case.

¶ 28    We conclude that plaintiff received all of the process he was due and failed to successfully raise a procedural due process challenge.

Plaintiff next contends that section 2105-165(e)(3) violates his substantive due process rights because it is overbroad. More specifically, plaintiff argues that the statute impermissibly revokes a health care worker's license based on a forcible felony conviction without consideration of the circumstances of the forcible felony. In terms of the statute's application to him, plaintiff maintains that the statute violated his substantive due process rights where his conviction had nothing to do with patient or sex-related conduct.

When a party raises a substantive due process challenge to a statute, the threshold question is whether the statute restricts or regulates a fundamental right. *Id.* ¶ 28. The " 'right to pursue a profession is not a fundamental right for due process purposes.' " *Rodrigues*, 2013 IL App (1st) 121196, ¶ 7 (quoting *Gersch v. Department of Professional Regulation*, 308 Ill. App. 3d 649, 656 (1999)). Critically, the supreme court has concluded that section 2105-165(a) does not implicate a fundamental right. *Hayashi*, 2014 IL 116023, ¶ 29. Accordingly, the constitutional challenge in this case need only be examined using the rational basis test. *Id.*

The rational basis test requires a court to identify the public interest that the statute was intended to protect, determine whether the statute bears a reasonable relationship to that interest, and verify whether the means chosen to protect that interest are reasonable. *Id.* "As long as there is a reasonably conceivable set of facts showing that the legislation is rational, it must be upheld. [Citation.] Whether the statute is wise or sets forth the best means to achieve the desired result are matters for the legislature, not the courts." *Id.*

Plaintiff argues that the automatic revocation statute for forcible felons is not rationally related to the Act's purpose as stated in *Hayashi* "to protect the health, safety, and welfare of the public by ensuring that individuals convicted of certain sex offenses would no longer be eligible to practice medicine in Illinois." *Hayashi*, 2014 IL 116023, ¶ 8.

While we do not dispute that one purpose of the Act, as applied to the facts of *Hayashi*, is as reported by plaintiff; however, we do dispute plaintiff's narrow reading as being demonstrative of the Act's overall purpose. Instead, the public interest behind the Act more broadly encompasses the protection of the entire public's health, safety, and welfare. See *id.* ¶ 30. Specifically, section 2105-10 of the Act provides:

> "Legislative declaration of public policy. The practice of the regulated professions, trades, and occupations in Illinois is hereby declared to affect the public health, safety, and welfare of the People of this State and in the public interest is subject to regulation and control by the Department of Professional Regulation.
>
> It is further declared to be a matter of public interest and concern that standards of competency and stringent penalties for those who violate the public trust be established to protect the public from unauthorized or unqualified persons representing one of the regulated professions, trades, or occupations ***." 20 ILCS 2105/2105-10 (West 2012).

Notably, the statute does not restrict its purpose to "those who violate the public trust" with convictions of patient or sex-related offenses. Rather, the stated purpose is to protect the public from unauthorized or unqualified persons representing one of the regulated professions, in this case a health care worker, who have violated the public trust. In *Hayashi*, the supreme court advised that "[t]he legislature has broad regulatory powers to set licensing requirements which are rationally related to the legitimate state interest of protecting the public from unqualified

medical practitioners." *Hayashi*, 2014 IL 116023, ¶ 31. The *Hayashi* court continued "[i]n addition, the legislature has a duty to require that applicants for medical licenses possess good moral character." *Id.* (citing *Abrahamson*, 153 Ill. 2d at 91).

¶ 35 With consideration for the legislature's broad power to establish standards for licensing practitioners in order to protect the public's health, safety, and welfare, we conclude that the automatic revocation of a health care license for anyone with a conviction stated in section 1205-165(a) of the Act is rationally related to the purpose of protecting the public from potentially dangerous health care workers and maintaining the integrity of the health care professions. The statute is neither arbitrary nor discriminatory. As the supreme court advised in *Hayashi*:

"We are cognizant that application of this Act to plaintiffs may yield harsh results by permanently barring plaintiffs from using their medical licenses or practicing their chosen professions. However, it is not a matter for this court to question the wisdom of the General Assembly in establishing licensing requirements, nor to determine whether it has chosen the best available means to achieve its desired result." *Hayashi*, 2014 IL 116023, ¶ 32.

¶ 36 Specifically with regard to subsection (a)(3) listing "forcible felony," it is clear that the legislature intended to protect the public not only from incidents involving patient or sex-related crimes, but also from incidents in which a forcible felony was committed. See *id.* ¶ 16 (to accomplish the goal of ascertaining and effectuating the legislature's intent, courts must apply the plain and ordinary meaning of the language itself without reading into it exceptions, limitation, or conditions not expressed by the legislature). The plain language of the statute demonstrates an intent by the legislature to protect the public from all health care workers who have committed forcible felonies. The legislature did not modify or limit the scope of subsection (a)(3), as it did with subsections (a)(1), (a)(2), and (a)(4). Under the facts of this case, there is no question plaintiff committed violent actions in confronting his wife's boyfriend while armed with a handgun in his leather-gloved hands, repeatedly striking the man while pointing the gun at his abdomen, and demanding the boyfriend's cell phone on which he had been speaking to plaintiff's wife, all while he knew the boyfriend's two children were in the home. These facts form a rational relationship to the legislature's intent to protect the public from violent health care workers. We are not persuaded by plaintiff's insistence that the 6-month gap in time between his guilty plea and the notice of his license revocation negates any rational relationship between the automatic revocation of licenses for forcible felons and the intent of the statute.

¶ 37 In sum, this court does not have the authority to question the legislature's judgment so long as there is a rational basis. We conclude that it is reasonable the legislature intended to protect the public from health care workers convicted of forcible felonies. We, therefore, find plaintiff failed to establish section 2105-165(a)(3) is overbroad in violation of his substantive due process rights.

¶ 38                     III. Retroactivity/Constitutionality of the Regulation

¶ 39 Plaintiff additionally contends that the Regulation defining "forcible felony," which was enacted after he pled guilty, was improperly applied retroactively and the Regulation impermissibly exceeds the scope of the Act.

¶ 40    In *Hayashi*, the supreme court determined that section 2105-165(a) does not have a retroactive impact. *Id.* ¶ 24. Applying the test established by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994), the Illinois Supreme Court found "the legislature plainly indicated the temporal reach [of the statute] by stating the license of a health care worker who has been convicted of one of the triggering offenses shall by operation of law be permanently revoked without a hearing." *Hayashi*, 2014 IL 116023 ¶ 24. In other words, the statute provides for revocation of a health care license only after its effective date; thereby, applying prospectively only. *Id.* The supreme court, however, clarified that the Act's reliance on convictions predating the enactment of the statute did not render it retroactive. *Id.* ¶ 25. Rather, the supreme court explained:

> "Section 2105-165 defines new *per se* eligibility requirements with which licensees must comply in order to practice their health care professions in Illinois. The Act does not 'reach back in time' to change the criminal penalties imposed on plaintiffs' convictions, nor does it render unlawful conduct that was lawful at the time it was committed." *Id.* ¶ 26.

As a result, the supreme court concluded that subsection 2105-165(a) only affects a plaintiff's present and future eligibility to use his or her health care license. *Id.*

¶ 41    Plaintiff does not challenge the application of section 2105-165(a) on retroactivity grounds, but instead challenges the retroactive application of the Regulation, which became effective after he was convicted and sentenced. See 68 Ill. Adm. Code 1130.120, adopted at 37 Ill. Reg. 1192 (eff. Feb. 1, 2013). Prior to February 1, 2013, the Act did not define "forcible felony." However, as of February 1, 2013, the legislature expressly defined "forcible felony," in relevant part, as aggravated battery (720 ILCS 5/12-3.05 (West 2012)) and armed robbery (720 ILCS 5/18-2 (West 2012)), as well as attempt (720 ILCS 5/8-4 (West 2012)) of any of the specified offenses. 68 Ill. Adm. Code 1130.120, adopted at 37 Ill. Reg. 1192 (eff. Feb. 1, 2013). Despite plaintiff's attempt to present a nuanced argument, we find the reasoning applied in *Hayashi*, in finding section 2105-165(a) to be prospective, additionally applies to the Regulation.

¶ 42    Pursuant to its authority, the legislature merely added the Regulation to expressly define "forcible felony." See 20 ILCS 2105/2105-165(g) (West 2012) ("[t]he Department may adopt rules necessary to implement this Section"). Keeping in mind the presumption that all statutes are constitutional, we find that, prior to February 1, 2013, "forcible felony" was defined by the Criminal Code (720 ILCS 5/2-8 (West 2012)). Accordingly, when plaintiff pled guilty to attempted armed robbery and aggravated battery, the offenses were forcible felonies. See 720 ILCS 5/2-8 (West 2012) (listing robbery, aggravated battery, and the "catchall" for attempt crimes: "any other felony which involves the use or threat of physical force or violence against any individual"). As such, there was no retroactive impact on plaintiff because the Regulation did not impair rights he had when he acted, increase his liability for past conduct, or impose new duties with respect to transactions already completed. See *Landgraf*, 511 U.S. at 280. Instead, where plaintiff's offenses constituted forcible felonies at that time, the Act, and thereby the Regulation, provided revocation of his health care license pursuant to the triggering offenses only after the *Act's* effective date, which there is no dispute was prior to the date plaintiff entered his guilty plea. We find support for our conclusion in other terms used in section 2105-165(a), namely, "criminal act" found in subsection (a)(1), "criminal battery, "sexual conduct," and "sexual penetration" found in subsection (a)(2), and "criminal sentence"

found in subsection (a)(4), all of which are terms based in the Criminal Code, but for which the Criminal Code was not expressly cited in the Act.

¶ 43        We are not persuaded by plaintiff's argument that his armed robbery conviction cannot constitute a forcible felony under subsection (a)(3) of the Act because the Regulation lists a different citation for the offense, *i.e.*, 720 ILCS 5/12-3.05 (West 2012), than his *mittimus*, *i.e.*, 720 ILCS 5/12-4 (West 2010). There is no dispute that section 12-4 of the Criminal Code was renumbered to section 12-3.05, effective July 1, 2011. As a result, when plaintiff was charged with armed robbery, the effective statute was section 12-4, but when plaintiff pled guilty the effective statute was section 12-3.05. The substance of the statute and offense remained unchanged, but was merely reorganized. We, therefore, find plaintiff's armed robbery conviction qualified as a triggering "forcible felony." Because we have found plaintiff's armed robbery conviction triggered the automatic revocation provision of section 2105-165(a)(3) of the Act, we need not address plaintiff's challenge that his attempted armed robbery conviction did not constitute a "forcible felony" under the Act where any "forcible felony" conviction triggers the statute.

¶ 44                                    IV. Remaining Arguments

¶ 45        Plaintiff also contends the application of the Regulation violates *ex post facto* laws and constitutes double jeopardy.

¶ 46        The United States and Illinois Constitutions prohibit the enactment of *ex post facto* laws. *Fletcher v. Williams*, 179 Ill. 2d 225, 234 (1997). Any law that changes the punishment for a crime and inflicts a greater punishment than allowed when the crime was committed is an unconstitutional *ex post facto* law. *Consiglio*, 2013 IL App (1st) 121142, ¶ 32. "The constitutional prohibition against *ex post facto* laws is aimed at legislative enactments that retroactively alter the definition of crimes or increase the punishment for criminal acts." *Id.*

¶ 47        Because we have determined that neither the Regulation nor the statute retroactively altered the definition of "forcible felony," we conclude that neither are impermissible *ex post facto* laws. See *People v. Burnom*, 338 Ill. App. 3d 495, 505 (2003) (describing attempted armed robbery as a forcible felony).

¶ 48        With regard to plaintiff's double jeopardy argument, we further find the Regulation did not violate the constitutional protection against double jeopardy. The United States and Illinois Constitutions prohibit multiple criminal punishments for one offense. *Consiglio*, 2013 IL App (1st) 121142, ¶ 23. However, a civil penalty generally is not considered a punishment for purposes of double jeopardy, unless it is so punitive in nature or effect that it is the "functional equivalent" of a criminal penalty. *Id.* In order to ascertain whether a civil penalty is actually punitive in nature, a court must consider the intent of the legislature. *Id.*

¶ 49        This court in *Consiglio* applied the seven factor test established by the United States Supreme court to determine whether the civil penalty imposed by section 2105-165(a) is punitive for double jeopardy purposes. *Id.* ¶ 24 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)). This court's analysis was thorough, and we see no need to depart from it or the conclusion that, on balance, the factors do not indicate a punitive effect. *Id.* ¶ 30. To the extent plaintiff argues that *Consiglio* must be distinguished because the analysis in that case did not involve a "forcible felony," we disagree. While true that the underlying facts of *Consiglio* involved the triggering offense of patient misconduct, the ultimate conclusion applies here too. As discussed previously, the purpose of the Act is to protect the general public

from not only health care workers who have committed patient or sex-related offenses, but also from those who have committed forcible felonies. Moreover, the Act aims to protect the high standards of the profession by requiring that licensees possess good moral character. See *Hayashi*, 2014 IL 116023, ¶ 31; see also *Bhalareo*, 834 F. Supp. 2d at 791. The Act is designed to address potential harms caused by the continued medical practice of a forcible felon. We conclude that the Act is not excessive in light of its nonpunitive purpose. As a result, we find subsection 2105-165(a)(3) does not violate the constitutional protection against double jeopardy.

¶ 50 Plaintiff additionally contends the circuit court erred in dismissing his claims that the Act and Regulation create an impermissible irrebutable presumption and constitute a bill of attainder. Plaintiff failed to cite any authority to support his contentions in violation of Illinois Supreme Court Rule 341(h)(7). See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (arguments in an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of authorities and the pages of the record relied on"). We, therefore, find the contentions are forfeited. See *Universal Casualty Co. v. Lopez*, 376 Ill. App. 3d 459, 465 (2007).

¶ 51 As a final matter, we find plaintiff's contention that the circuit court abused its discretion in denying his motion to stay the matter based on a proposed amendment to the Act has been rendered moot where the amendment to section 2105-165 did not affect the outcome of this case. See Pub. Act 99-886, § 5 (eff. Jan. 1, 2017).

¶ 52                                    CONCLUSION

¶ 53 Based on the foregoing, we affirm the dismissal of plaintiff's second amended complaint. In so finding, we hold that subsection 2105-165(a)(3) is constitutional on its face and as applied to plaintiff and similarly hold that the Regulation (68 Ill. Adm. Code 1130.120, adopted at 37 Ill. Reg. 1192 (eff. Feb. 1, 2013)) is constitutional.

¶ 54 Affirmed.